[764 NYS2d 73]

GEORGE KIMELDORF, Respondent, v FIRST UNION REAL ESTATE
EQUITY AND MORTGAGE INVESTMENTS et al., Appellants.

First Department, September 4, 2003

## APPEARANCES OF COUNSEL

*Danielle C. Lesser* of counsel (*Jerome Tarnoff, Edward P. Gilbert, Kristin T. Roy, Jay R. Speyer, Michael D. Braun* and *Jules Brody* on the brief; *Morrison Cohen Singer & Weinstein, LLP* and *Stull, Stull & Brody,* attorneys), for respondent.

*David J. Cynamon* of counsel (*Robert L. Plotz, Sarah P. Karwan, David C. Weiner, Michael J. Garvin, Sonja C. Rice, Theodore N. Mirvis, Rachelle Silverberg, William Savitt* and *Steven J. Pearl* on the brief; *Shaw Pittman LLP, Orans, Elsen & Lupert LLP, Hahn Loeser & Parks LLP* and *Wachtell, Lipton, Rosen & Katz,* attorneys), for appellants.

*Robert I. Harwood* of counsel (*Samuel K. Rosen* on the brief; *Wechsler Harwood LLP* and *Gerald W. Berger,* attorneys), for Robert F. Fink, amicus curiae.

## OPINION OF THE COURT

ANDRIAS, J.

On its face, this is a simple matter of the merger of two real estate ventures, First Union Real Estate Equity and Mortgage Investments (First Union) and nonparty Gotham Golf Partners, a Delaware limited partnership, to form Gotham Golf Corporation, a Delaware corporation. First Union is a real estate investment trust (REIT) organized under Ohio law.[1] Under the merger plan, the common shareholders can elect to receive either $2.33 for each share or $1.98 plus a pro rata share of certain notes and a subscription right to purchase shares in the new entity.

Plaintiff represents the class consisting of owners of convertible preferred shares in First Union, designated as series A in First Union's certificate of designations. As a result of the merger, by virtue of the rights bestowed by section 9 (b) of the certificate, First Union preferred share owners will receive "mirror" shares, that is, "convertible preferred shares of the surviving entity having preferences, conversion or other rights, voting powers, restrictions, limitations as to dividends, qualifications and terms or conditions of redemption thereof identical to that of a [First Union] series A preferred share." Pursuant to section 6 (e) of the certificate, upon consummation of the transaction, the holders of preferred shares are entitled to receive, as conversion rights, whatever "shares, securities and other property" that is due to the holder of the number of

---

1. The parties do not suggest that any particular state's law should be applied to resolve their dispute.

shares of common stock into which the preferred shares are convertible.

Plaintiff clearly does not want to own preferred shares of Gotham Golf Corporation or to receive the equivalent compensation. What plaintiff wants is to exercise the liquidation preference granted by section 4 (a) of the certificate of designations, which provides, in relevant part:

> "In the event of any liquidation * * * whether voluntary or involuntary, before any payment or distribution of the assets of the Trust (whether capital or surplus) shall be made to or set apart for the holders of Junior Shares, the holders of the Series A Preferred Shares shall be entitled to receive Twenty-Five Dollars ($25.00) per Series A Preferred Share plus an amount equal to all dividends (whether or not earned or declared) accrued and unpaid thereon to the date of final distribution to such holders, without interest; but such holders shall not be entitled to any further payment."

The immediate problem confronting plaintiff is that this transaction is a merger, not a liquidation, and section 4 (a) goes on to state:

> "For the purposes of this section 4, (i) a consolidation or merger of the Trust with one or more corporations, real estate investment trusts or other entities, (ii) a sale, lease or conveyance of all or substantially all of the Trust's property or business or (iii) a statutory share exchange shall not be deemed to be a liquidation, dissolution or winding up, voluntary or involuntary, of the Trust."

Given the plain language of the certificate of designations, the rights of plaintiff and other owners of First Union series A preferred shares are governed by the merger provisions contained in section 6 (e) and section 9 (b) of the certificate, not by the liquidation provision of section 4 (a).

Plaintiff, however, raises the spectre that the proposed merger is not so straightforward as it might appear based upon the relationship between defendant Gotham Partners L.P., a New York investment limited partnership, and the entities to be merged. He points out that Gotham Golf Partners, First Union's proposed merger partner, is "principally owned" by Gotham Partners L.P., the largest common shareholder of First Union, and managed by defendant William Ackman, principal

of Gotham Partners L.P. and former chairman of First Union's board of trustees. The complaint notes that Ackman gained control of the REIT after a bitter proxy battle led by Gotham Partners L.P. and that "[n]early 40% of the common shares of First Union are controlled by Trustees of the Board or their affiliates."

Plaintiff portrays Gotham Golf Partners as "insolvent" and "unable to pay its obligations without receiving a series of expensive loans from Gotham Partners." A series of bridge loans from Gotham Partners exceed $20 million and carry an interest rate of 24%. The merger, plaintiff contends, is no more than a bailout of Gotham Golf Partners, systematically engineered by defendant Ackman, aided and abetted by the other individual defendants. The complaint states, "Shortly after gaining control of First Union, the Gotham-led Board of Trustees began selling off the Company's assets," with the eventual result that "First Union has effectively been liquidated." Plaintiff charges that, since 1998, under Mr. Ackman's direction, First Union sold off the bulk of its properties, retaining only two "with a combined worth of $71 to 78.5 million, or less than 10% of the value of the portfolio of assets prior to carrying out the systematic process of liquidation."

Plaintiff's application for preliminary relief was prompted by the filing with the Securities and Exchange Commission of Gotham Golf Corporation's final amendment to its registration statement on October 31, 2002 and the subsequent mailing of proxy statements to shareholders. The proposed merger was approved on November 27, 2002 by 99% of the voting common share owners.

Supreme Court temporarily enjoined the merger on November 21, 2002 and, following three days of hearings, issued the preliminary injunction from which defendants appeal. The court decided that, while the rights of the preferred shareholders are generally defined by contract, the trustees owe them certain fiduciary duties, including "the obligation to present fair and candid presentations of the proposed transaction" (citing *Eisenberg v Chicago Milwaukee Corp.*, 537 A2d 1051, 1057 [Del Ch 1987]); "to safeguard the equity of the preferred" (citing *Eisenberg* at 1062); "to a fair apportionment of merger proceeds" (citing *Jedwab v MGM Grand Hotels, Inc.*, 509 A2d 584, 592, 594 [Del Ch 1986]); "and to advise truthfully the directors' interest and possible conflicts" (citing *Eisenberg* at 1060). Based on "the precarious nature of the financial condition of Gotham Golf [Partners]," the court found that "the

plaintiffs have a likelihood of success in their claims that the proposed merger/buy out puts the preferred at great risk and that the defendants have breached their limited duty to the preferred."

The court also found that "the plaintiffs have a likelihood of success on the issue of de facto liquidation." Although the certificate of designations excludes from the definition of liquidation either a merger or a sale of assets, the court reasoned that "this case is not a matter of a merger 'or' a sale of assets, it is a matter of both." The court concluded that, as a result of asset sales, First Union "was cash rich and effectively out of business as a REIT." The court found irreparable injury probable because, once First Union's cash "is used to satisfy Gotham Golf's debt, it will be unrecoverable."

The grant of preliminary injunctive relief requires the proponent to demonstrate a probability of ultimate success on the merits, irreparable injury in the event that injunctive relief is denied and a balancing of the equities (*W.T. Grant Co. v Srogi*, 52 NY2d 496, 517 [1981]; *see also Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862 [1990]). Quite apart from establishing the right to equitable relief, plaintiff is required to overcome the " 'powerful presumptions of the business judgment rule' " (*Wilson v Tully*, 243 AD2d 229, 232 [1998], quoting *Rales v Blasband*, 634 A2d 927, 993 [Del 1993]) that generally prohibit the courts from inquiring into the propriety of actions taken by the directors in good faith on behalf of a corporation (*see Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 537-538 [1990]).

Plaintiff advances two claims, although his complaint states but one cause of action. The first, which is not contained in the complaint, sounds in contract, and is predicated on the liquidation preference provision in the certificate of designations. It depends, for its success, on the proposition that a merger (*see* Business Corporation Law art 9) is really a liquidation (*see* Business Corporation Law art 10). Thus, a good half of plaintiff's brief is devoted to the attempt to hammer this particular square peg into a particularly unaccommodating round hole.

Plaintiff's contention that the systematic liquidation of First Union's property holdings in anticipation of the merger must be viewed as a de facto liquidation of First Union itself is devoid of merit. The sale of assets to facilitate changing a company's line of business is a perfectly legitimate practice, as a case relied upon by plaintiff notes (*see Eisenberg*, 537 A2d at 1053).

It does not serve to transform a "merger" into a "liquidation" (*compare* Business Corporation Law arts 9, 10). Without a liquidation, as contemplated by the certificate of designations, plaintiff's contract claim fails.

Supreme Court's construction of the liquidation provision, purporting to find both a merger and a liquidation, is disingenuous. If there were any doubt that only a formal dissolution (whether in bankruptcy or by actual filing of a certificate of dissolution) will trigger the liquidation preference provision, it is dispelled by the inclusion in First Union's certificate of designations of the "sale, lease or conveyance of all or substantially all of the Trust's property or business" as acts that specifically do not constitute dissolution. Plaintiff's intimation that First Union's "final step, the distribution of its remaining property to its shareholders, will occur with the cash out portion of the proposed transaction" similarly overlooks the fact that a "cash-out merger" is a legitimate device "where public stockholders can be involuntarily eliminated from the enterprise" (*Eisenberg*, 537 A2d at 1056). Again, plaintiff fails to offer any authority to support his suggestion that such merger is improper.

Plaintiff's second claim is based on a fiduciary duty owed by the individual defendant trustees to the preferred share owners. The basis of plaintiff's claim, however, is somewhat elusive, and defendants flatly dispute the existence of any such duty. Defendants' holdings, collectively, do not comprise a controlling interest in First Union; plaintiff identifies no particular wrongdoing, and his conclusion that defendants "willfully participated in unfair dealing toward plaintiff and the other members of the Class" is based on nothing more than innuendo (*cf. Ault v Soutter*, 167 AD2d 38 [1991], *lv dismissed* 81 NY2d 1007 [1993] [conversion of corporate assets to effectuate freezeout merger violated fiduciary duty owed by majority shareholders to minority share owners]).

Plaintiff's real grievance is with First Union's management and the course that it has charted for the company. The complaint states, "As of March 8, 2001, First Union owned one shopping mall and one office property," concluding, "First Union is a shell of what it once was." It continues, "An objective assessment of First Union revealed a poorly managed company with virtually no real estate assets, a large cash position and no meaningful acquisition candidates." The perceived detriment to the preferred shareholders is in the nature of the new enterprise: "Rather than receiving remuneration based

upon First Union's liquid state, they will receive preferred shares of Gotham Golf, a small owner/operator of golf courses—a far cry from a well-capitalized, publicly traded [real estate investment trust]." Plaintiff is particularly galled because the merger agreement "contemplates that the high interest bridge loans from Gotham Partners will be repaid upon the closing from funds that rightfully belong to the preferred shareholders."

Plaintiff's protestations notwithstanding, the money he seeks to withdraw from First Union belongs to the REIT, not to any particular group of share owners. Immediately at stake is whether nearly $25 million should be applied for corporate purposes (the anticipated repayment of high-interest, short-term debt) or whether it should be appropriated for distribution to the preferred shareholders. The determination of this question has little to do with the propriety of the merger. Even if it is assumed that the merger should not be permitted to go forward, it does not automatically follow that plaintiff is entitled to the liquidation preference for his shares. It simply means that management would have to find some alternative direction for First Union (one such alternative being dissolution), at which point the rights of the preferred shareholders will have to be reassessed.

If the intent of plaintiff's suit is to obtain payment of the liquidation preference under the certificate of designations, his likelihood of success on the merits is nil. However, the complaint states only a cause of action based upon breach of fiduciary duty, and the relief sought is to enjoin the merger transaction, not to obtain payment of the preference. The propriety of the merger is therefore intimately related to the question of whether Supreme Court properly exercised its discretion in imposing a stay.

Plaintiff asks the courts to evaluate the conduct of defendants in regard to their decision to merge First Union with Gotham Golf Partners. It is recognized that such a request is a significant imposition on the court's expertise:

> "It appears to us that the business judgment doctrine, at least in part, is grounded in the prudent recognition that courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments. The authority and responsibilities vested in corporate directors both by statute and decisional law proceed on the as-

sumption that inescapably there can be no available objective standard by which the correctness of every corporate decision may be measured, by the courts or otherwise. Even if that were not the case, by definition the responsibility for business judgments must rest with the corporate directors; their individual capabilities and experience peculiarly qualify them for the discharge of that responsibility. Thus, absent evidence of bad faith or fraud (of which there is none here) the courts must and properly should respect their determinations." (*Auerbach v Bennett*, 47 NY2d 619, 630-631 [1979].)

Plaintiff states no reason to justify the substantial intrusion by the courts into a matter of corporate governance. Particularly lacking is any justification for the substitution of plaintiff's evaluation of the merger's benefit, as a holder of preferred shares (which were not entitled to vote on the proposal), for that of the holders of the common shares, who approved the merger with near unanimity. The proxy statement and prospectus filed in connection with the proposed transaction is 284 pages in length, to which is appended 34 pages of financial statements. With the aid of the disclosures made in this document, the common shareholders voted overwhelmingly to approve the merger—a term with which the Securities and Exchange Commission presumably had no quarrel. The events leading up to the transaction, from which plaintiff fashions his claim of unfair dealing, are disclosed in considerable detail in the prospectus. So is the interest of Gotham Partners and the use of certain proceeds to repay loans extended by that entity. Curiously, plaintiff identifies no statement in the prospectus that he claims to be inaccurate or misleading.[2]

The question of how an entity should recast its line of business or restructure its operations is one for which there is "no available objective standard" for application by a court (*Auerbach*, 47 NY2d at 630), whereas the managers' "individual capabilities and experience peculiarly qualify them for the discharge of that responsibility" (*id.* at 631). Plaintiff characterizes the individual defendants, particularly defendant Ackman, as acting in their own self-interest. However, plaintiff does not

---

**2.** Although plaintiff notes that First Union's S-4 filing indicates that the transaction should be considered a "complete liquidation" under federal tax law, the treatment to be accorded any transaction for tax purposes is a matter best consigned to the taxpayer and the Internal Revenue Service.

claim that funds have been diverted to personal use, only that they are being applied to discharge a corporate obligation that will benefit a creditor in which a trustee (or former trustee) has a partnership interest.

Plaintiff does not provide any basis to enjoin a merger that has been decisively approved by the vast majority of share owners following full disclosure, as required by the Securities and Exchange Commission. Although he suggests that the committee of disinterested trustees formed to evaluate the merger acted in their own self-interest, he provides no substantive allegations and generally misrepresents the record. For instance, he states that defendant Daniel J. Altobello was not interested in Gotham Golf Corporation and "wanted to wash his hands of First Union." What the witness actually stated was that he would "not be part of the new, going-forward company." The reason he gave is that "I love golf passionately and I play it four or five days a week. I don't want it to be any part of my business because I don't want to be thinking of business on a golf course." As to defendant Bruce R. Berkowitz, plaintiff states that he "stood to cash in his common stock for nearly $1 million." However, ownership of common stock does not render a director's personal interest in the transaction more than that of any other common shareholder and, if anything, allies the director's interest with that of the other share owners (see *Angelo, Gordon & Co., L.P. v Allied Riser Communications Corp.*, 805 A2d 221, 228-229 [Del Ch 2002] [control of 3.5% of common stock does not render directors "interested" in merger]). As the Court of Appeals observed in *Auerbach* (47 NY2d at 632), "[n]otwithstanding the vigorous and imaginative hypothesizing and innuendo of counsel there is nothing in this record to raise a triable issue of fact as to the independence and disinterested status of these * * * directors."

Plaintiff makes much of the involvement of Gotham Partners in the operation of both First Union and Gotham Golf Partners. However, it is a matter of opinion whether the affiliation with both merger partners should be regarded as merely facilitating the transaction or tainting it with suspicion. In plaintiff's own estimation, First Union was "a poorly managed company with virtually no real estate assets, a large cash position and no meaningful acquisition candidates." Defendants, meanwhile, note that some 90 prospective strategic partners were considered by the special committee of disinterested trustees, "but only Gotham Partners demonstrated any serious interest in the transaction."

Finally, there is some doubt that a fiduciary duty is even owed to the preferred share owners under these circumstances. The cases relied upon to the contrary are inapposite to the situation here in that they hold that, in assigning a value to preferred shares, a board of directors dominated by a single shareholder owes such a duty to the preferred shareholders (*Jedwab*, 509 A2d at 593-594 [simultaneous cash-out merger of common and preferred stock]; *Eisenberg*, 537 A2d at 1057 [self-tender offer for preferred shares]). As the *Jedwab* court specifically noted, as to "preferential" rights of the preferred shares (as opposed to rights equally enjoyed by all classes of stock), such " 'preferential rights are contractual in nature and therefore are governed by the express provisions of a company's certificate of incorporation' " (509 A2d at 593, quoting *Rothschild Intl. Corp. v Liggett Group Inc.*, 474 A2d 133, 136 [Del Sup Ct 1984]). Here, since the First Union preferred share owners are receiving mirror stock in Gotham Golf Corporation (having the same rights as the existing First Union series A preferred shares), no valuation is involved. Plaintiff's rights are simply a matter of contract, as set forth in the certificate of designations.

In sum, what plaintiff has demonstrated is that the proposed merger may not represent the best investment of the funds accumulated by First Union. Plaintiff has also made it clear that significant benefits will inure to Gotham Golf Partners and, thereby, to Gotham Partners L.P. and William Ackman. What plaintiff has not established is that the actions taken by management to bring about the merger warrant the payment of the liquidation preference, or that they constitute grounds to ignore the vote of the common share owners by enjoining the merger.

Plaintiff has set forth no reason to remove the decision to pursue the merger from the operation of the business judgment rule (*see Auerbach*, 47 NY2d at 631). Thus, plaintiff has not established that, as a preferred share owner, he is entitled to relief either in contract or on the basis of a breach of fiduciary duty. Success on the merits is therefore highly improbable. Furthermore, absent any basis to recover the liquidation preference, plaintiff has not demonstrated that any injury has been sustained. Finally, plaintiff has provided no basis to conclude that any harm he might sustain as a result of dissolving the injunction would warrant the considerable intrusion by the courts upon the prerogatives of management and the subversion of the will of the common shareholders that the continuation of the preliminary injunction would entail.

Accordingly, the order of the Supreme Court, New York County (Charles Ramos, J.), entered December 6, 2002, which granted plaintiff's motion for a preliminary injunction staying the merger of defendant First Union Real Estate Equity and Mortgage Investments with nonparty Gotham Golf Partners to form Gotham Golf Corporation, pending determination of the action, should be reversed, on the law, with costs, plaintiff's motion denied, and the preliminary injunction vacated.

Motion seeking leave to file amicus curiae brief granted.

TOM, J.P., MAZZARELLI, ROSENBERGER and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered December 6, 2002, reversed, on the law, with costs, plaintiff's motion denied, and the preliminary injunction vacated. Motion seeking leave to file an amicus curiae brief granted.