■ James Owen, Individually and as a Shareholder of Starpoint Publishing Corp., Respondent, v Lindsay Hamilton et al., Appellants. [843 NYS2d 298]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered September 12, 2005, which granted plaintiff's motion for summary judgment on the issue of liability on his causes of action for waste of corporate opportunity (second cause of action) and breach of fiduciary duty (third cause of action), and denied defendants' cross motion for summary judgment dismissing the complaint, unanimously modified, on the law, the motion denied, and those aspects of defendants' cross motion seeking summary judgment dismissing the second and third causes of action and the claim for punitive damages granted, and otherwise affirmed, with costs in favor of defendants payable by plaintiff.

Defendant Starpoint Publishing Corp. (Starpoint) publishes "Winning Points," a periodical that provides information for sports handicappers. During most of the 1990s, plaintiff served as president of Starpoint and held a substantial portion of its shares (approximately 40%). In 1999, plaintiff was removed as president and replaced by defendant Lindsay Hamilton, who was also one of Starpoint's four directors. Around the time plaintiff was replaced, Mr. Hamilton purchased a portion of the shares plaintiff owned. As a result, Mr. Hamilton owned 51% of the shares, defendant Edward Bomze, another director, owned 30% and plaintiff owned the remaining 19%. Simultaneously with the sale, plaintiff entered into an employment agreement with Starpoint pursuant to which plaintiff received, among other things, a yearly salary through June 2007. At some point in 1999, plaintiff entered into another agreement, a shareholders' agreement, pursuant to which he agreed not to "interfere in any manner with the management, operation and control of [Starpoint]," and to vote his shares "as directed by [Mr.] Hamilton."

In 2001 Richard Bomze, Edward Bomze's brother, decided to sell a publication that he owned called "Sports Reporter." Like Winning Points, Sports Reporter provided information to sports handicappers. Richard Bomze informed his brother's wife, Gail Bomze, a Starpoint director, that Sports Reporter was for sale. Edward and Gail Bomze subsequently relayed that information to Mr. Hamilton. Mr. Hamilton proposed to Starpoint's board of directors that he and his wife, Linda, another director of Starpoint, purchase Sports Reporter and move its operations to Starpoint's office. By operating both Starpoint and Sports Reporter out of the same office, the entities could share expenses and thereby reduce Starpoint's operating costs. Each member of the board—Mr. Hamilton, Mrs. Hamilton, Edward Bomze and Gail Bomze—approved of the Hamiltons' purchase

of Sports Reporter, reasoning that the reduction in expenses would be beneficial for Starpoint, which was in a precarious financial state. The Hamiltons subsequently purchased Sports Reporter for $450,000. Plaintiff did not learn of the transaction until after it was consummated.

Plaintiff commenced this action against Mr. Hamilton, Edward Bomze, Starpoint and Sports Reporter, asserting causes of action for unjust enrichment, waste of corporate opportunity and breach of fiduciary duty. Plaintiff moved for summary judgment on the issue of liability on his causes of action for waste of corporate opportunity and breach of fiduciary duty. Defendants cross-moved for summary judgment dismissing the complaint. Supreme Court granted the motion and denied the cross motion.

Defendants assert two principal grounds for reversal: Starpoint itself was unable to purchase Sports Reporter, and Starpoint's board of directors approved of the transaction, i.e., consented to the Hamiltons' purchase of Sports Reporter. With respect to the latter, defendants also assert that the board's determination is insulated from judicial review by the business judgment rule.

The first argument can be disposed of with dispatch. While some authority supports defendants' contention that a director cannot be liable for usurping a corporate opportunity where the corporation would have been unable to avail itself of the opportunity (*see Moser v Devine Real Estate, Inc. [Florida]*, 42 AD3d 731 [3d Dept 2007], citing *DiPace v Figueroa*, 223 AD2d 949 [3d Dept 1996] [transaction could not be considered corporate opportunity where sellers unequivocally averred that they would not have sold assets at issue to corporation]; *see also* Haig, Commercial Litigation in New York State Courts § 80.7 [4A West's NY Prac Series 2d ed]), we have consistently held to the contrary. In *Foley v D'Agostino* (21 AD2d 60 [1964]) we stated the following principle, which we have repeatedly affirmed: "the fact that the competing business undertaken presented itself in the form of a corporate opportunity which the corporation was financially unable or for other reasons unwilling to undertake should be no excuse for an officer undertaking it individually. Despite the corporation's inability or refusal to act it is entitled to the officer's undivided loyalty" (*id.* at 68 [internal quotation marks omitted]; *see Bankers Trust Co. v Bernstein*, 169 AD2d 400 [1991]; *Alexander & Alexander of N.Y. v Fritzen*, 147 AD2d 241 [1989]; *Robert N. Brown Assoc. v Fileppo*, 38 AD2d 515 [1971]). Accordingly, neither Richard Bomze's unwillingness to sell Sports Reporter to Starpoint nor

Starpoint's alleged financial inability to avail itself of the opportunity had it been offered is a valid defense to plaintiff's action.

Defendants' second argument—that Starpoint's board of directors approved of the transaction—warrants more attention. A director may avoid liability for usurping a corporate opportunity where the board of directors consents to the director's conduct (*see Ackerman v 305 E. 40th Owners Corp.*, 189 AD2d 665 [1993]; *Commodities Research Unit [Holdings] v Chemical Week Assoc.*, 174 AD2d 476 [1991]; *Bankers Trust Co., supra*; *Alexander & Alexander of N.Y., supra*; *Robert N. Brown Assoc., supra*; Haig, Commercial Litigation in New York State Courts § 80:8 [4A West's NY Prac Series]; *see also Miller Mfg. Co. v Zeiler*, 72 AD2d 338 [1980], *lv denied* 50 NY2d 894 [1980]).[1]

Here, prior to the consummation of the transaction, each member of Starpoint's board of directors—Mr. Hamilton, Mrs. Hamilton, Edward Bomze and Gail Bomze—was aware of and approved of the sale of Sports Reporter to the Hamiltons. To be sure, Edward and Gail Bomze mentioned to Mr. Hamilton that Richard Bomze was interested in selling Sports Reporter, and they did so because they wanted Mr. Hamilton to purchase Sports Reporter. Each of the directors knew, before the Hamiltons purchased Sports Reporter, that Starpoint was in serious financial trouble; Starpoint was losing money annually, facing increased competition and lacked the resources to improve its product, Winning Points.

Of course, neither of the Hamiltons could cast a vote in favor of the transaction. Both of these directors "receive[d] a direct financial benefit from the transaction which is different from the benefit to shareholders generally" (*Marx v Akers*, 88 NY2d 189, 202 [1996]). They were, therefore, interested directors who were disqualified from consenting to the transaction. Neither Edward nor Gail Bomze, however, received a direct financial benefit from the sale of Sports Reporter to the Hamiltons that

---

1. A board of directors cannot consent to a transaction that is void, such as waste of corporate assets, use of corporate funds to discharge personal obligations, distribution of surplus earnings under guise of additional salaries to directors and officers, transfer of assets without consideration, payment of a false claim, and payment of excessive investment fees to directors (*Aronoff v Albanese*, 85 AD2d 3, 4-5 [1982]). Plaintiff, however, does not claim on appeal that defendants engaged in any of these forbidden acts. Rather, plaintiff claims that defendants usurped a corporate opportunity, a transaction that can be ratified (*Commodities Research*, 174 AD2d at 477 ["The corporate opportunity doctrine provides that a corporate fiduciary may not, *without consent*, divert and exploit for his own benefit any opportunity that should be deemed an asset of the corporation" (emphasis added)]).

was different from the benefits to the shareholders generally (*id.*; *Shapiro v Rockville Country Club, Inc.*, 22 AD3d 657, 659 [2005], *lv denied* 6 NY3d 705 [2006]). Pursuant to the 1999 shareholders' agreement, Edward received a $66,000 per year salary. This additional interest of Edward in Starpoint's success did not render him an interested director in the transaction. While plaintiff asserts that Edward and Gail were "conflicted," plaintiff does not support this conclusory assertion with any evidence that they received a direct financial benefit from the sale which was different from the benefits to the shareholders generally. Moreover, there is no evidence that Edward and Gail Bomze were controlled or dominated by the interested directors (*see Park Riv. Owners Corp. v Bangser Klein Rocca & Blum*, 269 AD2d 313 [2000]; 3 Fletcher, Cyclopedia of Corporations § 941 [2002]). Thus, Edward and Gail Bomze were not interested directors and their consent to the transaction is binding on the corporation (*see* Business Corporation Law § 713 [a] [1]; *Rapoport v Schneider*, 29 NY2d 396, 402 [1972]).

The business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes" (*Auerbach v Bennett*, 47 NY2d 619, 629 [1979]).[2] Here, Edward and Gail Bomze did not "passively rubber-stamp the decision[ ]" of the Hamiltons to purchase Sports Reporter (*Ault v Soutter*, 204 AD2d 131 [1994], quoting *Barr v Wackman*, 36 NY2d 371, 381 [1975]). Rather, they considered Starpoint's financial condition and the potential benefits to it of an expenses-sharing relationship with Sports Reporter. Notably, it was Edward and Gail Bomze, the disinterested directors, who approached Mr. Hamilton with the idea for him to purchase Sports Reporter because they believed that transaction could help Starpoint avoid financial collapse. Thus, the decision of Edward and Gail Bomze to consent to the Hamiltons' purchase of Sports Reporter was taken in furtherance of Starpoint's interests, was within the scope of the board's authority and was taken in good faith (*see Barbour v Knecht*, 296 AD2d 218, 224 [2002]; *see also Auerbach*, 47 NY2d at 629).

The business judgment rule, however, does not foreclose judicial inquiry into the decision of a board of directors where the board acted in bad faith, e.g., deliberately singled out an individual for harmful treatment (*Barbour v Knecht*, 296 AD2d at 224; *Smukler v 12 Lofts Realty*, 178 AD2d 125, 125 [1991]), or the transaction is tainted by fraud (*see 10 E. 70th St. v Gimbel*,

---

2. Contrary to plaintiff's assertion, defendants raised the business judgment rule before Supreme Court.

309 AD2d 644 [2003]; Haig, Commercial Litigation in New York State Courts § 75:36 [4A West's NY Prac Series]). However, plaintiff presented no evidence raising a triable issue of fact in this regard. Thus, Supreme Court should have granted that aspect of defendants' cross motion seeking summary judgment dismissing plaintiff's cause of action for waste of corporate opportunity.[3]

For similar reasons, Supreme Court should have granted that aspect of the cross motion seeking summary judgment dismissing the cause of action for breach of fiduciary duty. Defendants made a prima facie showing that the disinterested directors acted within the scope of their authority and in good faith, and plaintiff failed to raise a triable issue of fact (*see Kimeldorf v First Union Real Estate Equity & Mtge. Invs.*, 309 AD2d 151, 156-159 [2003]; *Hochman v 35 Park W. Corp.*, 293 AD2d 650, 651-652 [2002]; *Sirianni v Rafaloff*, 284 AD2d 447, 448 [2001]; *Sherry Assoc. v Sherry-Netherland, Inc.*, 273 AD2d 14, 14-15 [2000]).

We take no position on plaintiff's remaining cause of action, unjust enrichment, since neither party specifically addressed it on appeal. We note, however, that plaintiff has no claim for punitive damages. Defendants' alleged conduct does not "demonstrat[e] a high degree of moral turpitude and wanton dishonesty . . . imply[ing] criminal indifference to civil obligations to the public" (*Parker v Crown Equip. Corp.*, 39 AD3d 347, 348 [2007]; *see Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489 [2007]). Concur—Mazzarelli, J.P., Friedman, Buckley, Sweeny and McGuire, JJ.

---

3. Of course, the tension between the fiduciary duties owed by the Hamiltons as directors of Starpoint and their ownership of a competitor of Starpoint is apparent. On this appeal, however, plaintiff only presses his causes of action for waste of corporate opportunity and breach of fiduciary duty based on usurpation of a corporate opportunity.