| **Pokoik v Norsel Realties** |
|:---:|
| 2025 NY Slip Op 30463(U) |
| February 5, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 653382/2014 |
| Judge: Joel M. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JOEL M. COHEN**
*Justice*

PART _____03M_____

-------------------------------------------------------------------------------X

LEON POKOIK, LEON POKOIK FAMILY PARTNERS, L.P., KATHIE POKOIK, DAVIN POKOIK, ALICIA POKOIK DETERS,

Plaintiffs,

- v -

NORSEL REALTIES, 575 REALTIES, INC.,575 ASSOCIATES, LLC,STEINBERG & POKOIK MANAGEMENT CORP., MICHAEL L. STEINBERG, JAY LIEBERMAN, JOHN DOE, ANDREW BENENSON, MEREDITH K. COHEN, LESLIE ENDELSON, ALISON GRANBERY, JOHANNA IGEL, RONNIE IGEL, CAROLYN A. KOSLOW, PETER KOSLOW, WILLIAM KOSLOW, GARY POKOIK, JONATHAN POKOIK, JUSTINE POKOIK HOPKINS, MERYL SHERMAN, DIANE L. STEINBERG, FRANCINE STEINBERG, JEFFREY STEINBERG, STUART L. STEINBERG, NORSEL REALITIES, LLC.

Defendants.

INDEX NO. _____653382/2014_____

-------------------------------------------------------------------------------X

## DECISION AFTER NON-JURY TRIAL

This is a dispute among family members holding interests in three jointly owned and interrelated entities that own and operate the commercial building located at 575 Madison Avenue in Manhattan. The specific dispute centers around the calculation of the ground lease that one jointly owned entity would be required to pay to another jointly owned entity. Plaintiffs contend that the rent was set at an artificially low level to benefit the estate planning goals of certain managers of the family business to the detriment or other family members. In the end, family members accounting for nearly 90% of the partnership interests (including more than 50% of the interests from Plaintiffs' "side" of the family) in the relevant entities approved the disputed calculation of the rent.

# DECISION AFTER NON-JURY TRIAL

After hearing the evidence at a seven-day-day bench trial, and considering the briefs and closing arguments of counsel, the Court concludes that Plaintiffs' claims asserting breach of fiduciary duty are meritless. The managerial decisions challenged by Plaintiffs were not "interested" or "conflicted" decisions subject to enhanced judicial scrutiny. The decisions were well within the bounds of reasonable business judgment entitled to judicial deference, and were ratified by partners representing well more than 50% of the partnership interests consistent with the terms of the partnership agreement. Accordingly, Plaintiffs' claims are dismissed with prejudice.

## FINDINGS OF FACT

Through jointly owned entities, the Steinberg and Pokoik families – related by marriage – have owned interests in numerous properties in and around New York City for more than 100 years (NYSCEF 476 ¶ 2; NYSCEF 591-97 [hereinafter "Tr."], at 28:16-22; 412:22-413:3). Throughout that period, the Steinberg and Pokoik families have equally divided their collective ownership interests (50%-50%), including their interests in the property at issue in this case, 575 Madison Avenue ("the Property"). (Tr. at 39:6-8, 155:13-156:9; 325:19-23, 413:4-9).

As relevant here, Norsel Realties ("Norsel") owned the fee interest at the Property, and its business in connection with the Property since inception was collecting the ground rent from other family-owned entities that managed the property and collected rent from commercial tenants (NYSCEF 476 ¶ 4-5). (In late 2014, Norsel's ownership interest was transferred to Norsel Realties LLC, of which Norsel is the sole managing member (NYSCEF 476 ¶ 4, n.1)).

All interests in the Property are owned by three entities owned in equal portions by the Steinberg and Pokoik families (*id.*). The three entities are (1) Norsel Realties LLC (managed by Norsel), (2) 575 Realties Inc. ("575 Realties"), and (3) 575 Associates LLC ("575 Associates").

On January 1, 1995, Norsel and 575 Realties executed an Eighth Amendment of the long-standing Ground Lease for the Property. 575 Realties in turn conveyed an interest in the Property to 575 Associates by a net lease and paid rent to Norsel (and, after 2014, its successor, Norsel Realties LLC). Finally, 575 Associates received occupancy rent from space tenants and paid rent to 575 Realties (*id.* ¶ 9-14). The ownership and management structures of the Property have been in place for more than 60 years, long before Defendants and the current managers ascended to their roles in the family business (Tr. at 418:5-9, 424:18-20, 556:15-21, 795:21-796:5).

The basic three-tiered structure described above, under which various related entities either owned or operated the Property in accordance with the various leases, preceded the family's ownership. The original lease for the Property was signed in 1948, and when the family acquired the Property in the 1960s, it was owned through related entities controlled by Metropolitan Life Company (Jx1; Tr. at 29:18-30:4, 417:1-418:9). The family purchased the various interests "piecemeal," with 575 Realties in the "middle position" (Tr. at 417:1-418:4). Around the same time, Norsel purchased the fee interest (*id.* at 417:-418:4, 795:13-20). A third entity, Madison Avenue Advisors, operated the building at the time of the family's purchase and was succeeded by 575 Associates, LLC (*id.* at 417:1-418:4).

In 1988, members of each family signed the Norsel Articles of Partnership (the "NAP") to conduct business as Norsel (NYSCEF 476 ¶ 3). The NAP provided for Norsel's business to be conducted by all partners (*id.* ¶ 15). However, in the event of "a difference of opinion among the partners . . . the decision made by partners having more than 50% partnership interest shall prevail" (Jx3 ¶ 2; Tr. at 418:17-419:22).

The Plaintiffs' ownership interests in the relevant entities are as follows: Plaintiff Leon Pokoik and his children Plaintiff Davin Pokoik and Plaintiff Alicia Pokoik Deters collectively owned 10.8% of Norsel, both as individuals and as trustees of various trusts (*id.* ¶ 6; Tr. at 112:6-11). Leon was a partner of Plaintiff Leon Pokoik Family Partners, L.P., which owned an 8.03% interest in 575 Realties (*id.* ¶ 7). Plaintiffs Davin Pokoik and Alicia Pokoik Deters each owned a 0.018% interest in 575 Realties (*id.*). Leon was also the beneficiary of Leon Pokoik Lifetime Trust (the "Trust"), which owned a 10.7794% interest in 575 Associates. Davin and Alicia each owned a 1% interest in 575 Associates (*id.* ¶ 8). Thus, Plaintiffs, including Leon and his Trust, held beneficial positions in all three relevant entities (Tr. at 110:13-23; 434:15-435:1; 1062:6-15).

At all times relevant to this dispute, the entities were collectively managed by Defendants Michael Steinberg and Jay Lieberman, along with Jeffrey Steinberg, Matthew Steinberg, Gary Pokoik, and Jonathan Pokoik (NYSCEF 476 ¶ 16). The daily operations of the Property were managed by Steinberg & Pokoik Management Corp. ("SPMC"), a wholly-owned subsidiary of 575 Realties in which Defendant Steinberg became President in 2011 (Tr. at 411:14-16; NYSCEF 476 ¶ 17). Matthew and Jonathan held Vice President roles at SPMC (NYSCEF 476 ¶ 18). Plaintiff Leon Pokoik actively participated in management of the Property and Norsel from 1968 to 2006 (Tr. at 26:4-9; 126:2-4, 141:13-16, 414:20-415:13; 420:1-9, 790:4-17, 1053:17-1054:10, 1061:23-1062:2).

On January 1, 1995, when Norsel and 575 Realties executed the Eighth Amendment of the Ground Lease, Plaintiff Leon Pokoik was involved in management of Norsel (*see* NYSCEF 476 ¶ 9). Under Section 2(B)(1) of the Eighth Amendment, "[t]he Tenant shall be entitled to a renewal of the term of this Lease . . . for a further period of ten (10) years beginning January 1,

2015 and ending December 31, 2024, provided, however, that the Tenant shall have given the Landlord at least one (1) year's, and not more than fifteen (15) months', notice of such election" (*id.* ¶ 11). The same section also provided for calculating the ground rent for the First Renewal Term, stating "[t]he net annual rent reserved to cover the first renewal term shall be a sum equal to five (5%) percent of the then appraised value of the land subject to this Lease covering the first renewal term, at the commencement thereof considered as unimproved and exclusive of any buildings or improvements thereon" (*id.* ¶ 12; Jx6, at 5). The Eighth Amendment further provided that Tenant would have the option to renew the lease as many as three times, through 2043 if the lease was still in force in 2034 and the Tenant had met its obligations under the lease (Jx6 at 5-7).

When it came time to set the rent for the Ninth renewal term under Section 2(B)(1), members of both families were considering creating Grantor Retained Annuity Trusts ("GRATs"), which would provide "generous estate tax exemption benefits" to "the next generation" which held higher percentages in 575 Associates relative to Norsel (Jx13-16; Tr. at 367:9-368:18). Michael said in a letter to Leon Pokoik that the creation of GRATs was time-sensitive because the tax code provision permitting them would "sunset[]" at the end of 2012 (Jx15).

Before setting the rent for the renewal term under Section 2(B)(1), management obtained an October 20, 2011 appraisal from Joel Leitner, MAI of Leitner Group, Inc. (the "2011 Leitner Appraisal"), and valuation report from Empire Valuation Consultants, LLC, dated December 6, 2011 (the "2011 Empire Report") (NYSCEF 476 ¶¶ 23-26). The 2011 Empire Report stated an "understanding that this valuation will be used . . . for estate planning and gift tax reporting purpose," and the 2011 Leitner Appraisal valued the fee at $76 million and calculated the

average annual ground rent for the three renewal periods of $5.1 million (*id.*; Jx8; Jx10, at 1; Tr. at 727:4-7). Leitner testified that he read Section 2(B)(1) of the Eighth Amendment to require that he appraise value of the fee interest as being "subject to" the encumbrance of the long term leasehold interest held by 575 Realties, which generally has the effect of decreasing the appraised value of the fee interest because it limits the uses to which the property can be put (Tr. at 706:17-25; 753:4-10). The 2011 Empire Report was based in part on the valuation conclusions of the 2011 Leitner Appraisal (NYSCEF 476, ¶¶ 23-26). Leon, or entities he controlled, received both the 2011 Leitner Appraisal and the 2011 Empire Report (*id.*). The credible evidence at trial did not suggest or establish that Defendants influenced Leitner's appraisal (Tr. at 725:11-726:16; 453:12-16; 801:2-802:10; 1070:15-1070:4).

On July 9, 2012, Leon's counsel sent Michael a letter prepared by Metropolitan Valuation Services, Inc. ("MVS") (*id.* ¶ 27; Jx18). The letter opined that Leitner incorrectly construed the phrase "subject to this Lease" in Section 2(B)(1) of the Eighth Amendment to be an encumbrance on the land's value (NYSCEF 476 ¶ 27, Jx18). Instead, MVS contended, the "subject to the lease" language in Section 2(B)(1) was meant simply to define the property itself (that is, "the land [that is] subject to the lease"), not to indicate that the appraisal should discount the value of the land to reflect an encumbrance.

On December 10, 2012, Leon sent Michael a copy of a December 10, 2012 appraisal prepared by MVS (the "2012 MVS Appraisal") (NYSCEF 476 ¶ 28; Jx25). The 2012 MVS Appraisal concluded that the unencumbered fair market value of the fee was $210 million and calculated the annual rent for the First Renewal Term at $10.5 million (NYSCEF 476 ¶ 29). MVS conducted another appraisal, dated January 22, 2013, which reaffirmed the conclusions of its 2012 appraisal (*id.* ¶ 30; Jx28, at 10).

[* 6]

Norsel's managers rejected the 2012 MVS Appraisal, concluding that it relied on a flawed interpretation of the Eighth Amendment by failing to "take into consideration the encumbrance of the ground lease" (Tr. at 461:24-463:1, 813:5-816:3; 1071:5-1073:11). On October 29, 2013, Michael engaged the Leitner Group to conduct another appraisal (the "2013 Leitner Appraisal") (NYSCEF 476 ¶¶ 31-32; Jx38). The 2013 Leitner Appraisal found the value as of August 1, 2013, to be $92 million and calculated an annual ground rent for the First Renewal Term of $7.2 million (NYSCEF 476 ¶¶ 33-34). The Norsel Managers reviewed the appraisals and concluded they would not have elected to extend the ground lease if the rent were set at $10.5 million or higher (Tr. at 377:16-23; 460:6-22; 463:5-13; 473:10-20; 815:11-816:23, 822:5-823:4; 1076:7-1078:2, 1093:19-1094:1, 1114:12-1117:1; 1129:23-1130:17). Defendants' appraisal expert, Sharon Locatell, testified that the Leitner appraisal, including the ground rent renewals in the 2013 Leitner Appraisal and the calculations of the value of the land as unencumbered, had been reached in a manner that was "reasonable and credible" (Tr. at 909:24-910:23, 965:10-17, 969:4-15, 972:21-977:1).

On August 28, 2014, all Norsel partners *other than* Plaintiffs executed a consent to a $7.2 million ground rent for the First Renewal Term based on the 2013 Leitner Appraisal (NYSCEF 476 ¶ 37; Tr. at 398:24-399:1; 1092:17-1093:2). Plaintiffs did not sign the consent (NYSCEF 476 ¶ 38). Ultimately, signatories from both sides of the family (Steinberg and Pokoik) executed the consent, representing 89.2% of the partnership interest in Norsel (Jx47, Jx54; Tr. at 829:23-25; 1095:15-20). At the same meeting, Michael and Lieberman executed the Ninth Amendment of the Lease Agreement, in which 575 Realties agreed to pay Norsel $7.2 million rent per year (NYSCEF 476 ¶ 39). Michael signed for 575 Realties, while Lieberman signed for Norsel (*id.* ¶ 40). Finally, 575 Realties and 575 Associates amended the net lease, and 575 Associates agreed

[* 7]

to pay 575 Realties $7.5 million per year, representing the ground rent under the Ninth Amendment plus $300,000 (the "Net Lease Amendment") (*id.* ¶ 41).

In October 2014, Leon sent to Norsel Management an updated MVS appraisal, valuing the land at $407 million and the ground rent at $20.35 million per year (*id.* ¶ 43; Jx53; Jx55). Notably, the proposed rent was higher than the net operating income of the building in 2014 (Jx58, Tr. at 480:3-9; 834:16-836:12; 1107:5-9).

On November 4, 2014, Plaintiffs commenced this action (NYSCEF 475, at 1). Between 2014 and 2018, Plaintiffs' claims were twice dismissed and reinstated on appeal (*id.* at 1-2). The surviving claims are claims for breach of fiduciary duty against Michael ("Count 1") and Lieberman ("Count 2") related to the Ninth Amendment of the lease (NYSCEF 46 ¶ 95-98; *Pokoik v Norsel Realties*, 164 AD3d 1124, 1125-26 [1st Dept 2018]; *see also* NYSCEF 139).

The Court conducted a non-jury trial (NYSCEF 591-597, "Tr.") and heard closing arguments (NYSCEF 634) after post-trial briefing.

## **CONCLUSIONS OF LAW**

To prove a claim for breach of fiduciary duty, a plaintiff must prove "that '(1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct'" (*N.Y. Marine & General Ins. Co. v Wesco Ins. Co.*, 213 AD3d 461, 462 [1st Dept 2023] [quoting *Besen v Farhadian*, 195 AD3d 548, 549-50 [1st Dept 2021]]). Partners and managing partners owe a fiduciary duty to other partners (*Birnbaum v Birnbaum*, 73 NY2d 461, 465 [1989]; *Frame v Maynard*, 83 AD3d 599, 602 [1st Dept 2011]).

This duty encompasses "a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect" (*Birnbaum*, 73 NY2d at 466; *see also Lisa Goldberg Qualified Personal Residence Tr. v Bd. of Mgrs. of Madison Square Condo*, 181 AD3d 542 [1st

[* 8]

Dept 2020]). "'This is a sensitive and inflexible rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty'" (*Pokoik v Pokoik*, 115 AD3d 428, 429 [1st Dept 2014] [quoting *Birnbaum*, 73 NY2d at 466]). A fiduciary is "self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally" (*Marx v Akers*, 88 NY2d 189, 202 [1996]; *see also In re Comverse Technology, Inc.*, 56 AD3d 49, 54 [1st Dept 2008]).

In this case, the parties do not dispute that Defendants owed a duty to Plaintiffs. Rather, the question centers on whether to apply the business judgment rule or the entire fairness standard to Defendants' decision to set the ground rent in the amount at which (and perhaps the manner in which) it was set. For the reasons that follow, the Court concludes the business judgment rule applies and precludes the Court from second-guessing the managers' good faith business judgment.

## I. The Business Judgment Rule Applies

The business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes" (*Ull v. Royal Car Park LLC*, 179 AD3d 469, 470 [1st Dep't 2020] [quoting *Auerbach v. Bennett*, 47 NY2d 619, 629 [1979]]; *see also S. Tower Residential Bd. of Mgrs. of Time Warner Ctr. Condo. v. Ann Holdings, LLC*, 127 AD3d 485, 486 [1st Dep't 2015]). The doctrine requires that, "absent evidence of bad faith or fraud[,] . . . the courts must and properly should respect [business] determinations" (*Auerbach*, 47 NY2d at 630; *see also Shapiro v Rockville Country Club, Inc.*, 22 AD3d 657, 658 [2d Dept 2005] ["[A]bsent claims of fraud, self-dealing, unconscionability or other misconduct, the court should apply the business judgment

[* 9]

rule and should limit its inquiry to whether the action was authorized and whether it was taken in good faith and in furtherance of the [business's] legitimate interest"]).

As the Court of Appeals has observed, "courts are ill equipped to evaluate what are essentially business judgments" (*In re Kenneth Cole Prods., Inc.*, 27 NY3d 268, 274 [2016] [internal citation omitted]; *Auerbach*, 47 NY2d at 630). Pertinent here, partners acting as fiduciaries are entitled to the same protections as corporate directors (*Levine v. Levine*, 184 AD2d 53, 59 [1st Dep't 1992]; *Lichtyger v. Franchard Corp.*, 18 NY2d 528, 536-37 [1966]). Here, plaintiffs have failed to overcome this Court's presumptive deference to business decisions because Defendants were not "interested" in the lease agreement in a way that would shift the burden to defendants to prove entire fairness.

All Norsel partners (including the Defendants and the Plaintiffs) stood to obtain the same benefits—and losses, if any—stemming from the transactions. When a fiduciary receives a benefit from a challenged transaction which is no different from those the shareholders generally received, they are not considered interested in the transaction (*see Owen v Hamilton*, 44 AD3d 452, 455-56 [1st Dept 2007] [citing *Marx v Akers*, 88 NY2d 189, 202 [1996]]). Perhaps most commonly, an "interested" transaction is one in which one or more directors are on both sides of the transaction but the other shareholders challenging a transaction are not (*see, e.g.*, *Lewis v S.L.E., Inc.*, 629 F2d 764, 767 [2d Cir 1980]). These circumstances are not present here since Plaintiffs held positions in all three relevant entities, distinguishing this case from *Lewis* (NYSCEF 476 ¶¶ 6-8; Tr. 110:13-23; 434:15-435:1; 1062:6-15).

As described above, the ownership interests in the Norsel entities were split evenly between members of each of the Steinberg and Pokoik families, and there were six managers of Norsel: Three managers were from the Steinberg family, and three were from the Pokoik family

(Tr. at 39:6-8; 155:13-156:9; 325:19-23, 413:4-9). Further, no individual held a controlling position in Norsel. All the shares of Norsel were small, fractional interests (Jx47). While there were slight differences in the minority percentages held by each partner within Norsel (as well as small differences in the minority percentages held by each shareholder in the other two entities), there is no argument or allegation that any individual was obtaining anything other than pro rata distributions in proportion to the contract. Neither, for that matter, is there any assertion that the profits of *any* of the three entities ultimately ended up disproportionately in the hands of Defendants or their family members. Again, the overarching principle throughout has been that the ownership structure of the various entities with interests in the subject property (Norsel, 575 Realties and 575 Associates) were equally divided between the two families.

Further, there has been no showing that Michael or Lieberman "were controlled or dominated by" any other interested directors (*see Owen*, 44 AD3d at 456). Despite Plaintiffs' arguments that the Steinberg side of the family dominated the process, an overwhelming majority of members of both families signed the consent to set rent in the ground lease— including a majority of the Pokoik side of the family (Jx47, Jx54; Tr. at 829:22-25; 1095:15-20).

Plaintiffs' suggestion that different estate planning strategies employed by various family members rendered the rent-setting decision an "interested" transaction is unavailing. Trusts under the control of Michael Steinberg and Jay Lieberman received the same benefit as every other partner in Norsel and the other 575 Entities: a pro rata share of distributions (Tr. at 429:2-17, 431:7-13, 1058:20-1059:11). Moreover, Plaintiffs' claims that Defendants' actions disproportionately benefited their estate planning were unproven—and arguably contradicted by the record. Plaintiffs failed to prove that either Michael Steinberg or Jay Lieberman created

GRATS with their Norsel interests (Tr. at 335:23-336:2, 357:8-10; *see also* NYSCEF 626, at 17:15-18:25). Instead, Plaintiff Leon Pokoik did (Tr. at 109:10-14, 111:22-24).

Further, as Leitner and Locatell credibly testified, the "function" or "intended use" of an appraisal has no impact on the market value indicated in the appraisal itself, and Plaintiff has made no showing why the Court would impute one here (*see* Tr. at 726:22-727:4, 923:16-18). While certain aspects of the methodology may change, the appraisals must follow USPAP and thus the valuation itself should not change (NYSCEF 627, at 21:4-10; 19-25; NYSCEF 628, at 29:24-30:17). Finally, the ground rent transaction was ratified by partners representing almost 90% of interests in Norsel (Jx47, Jx54; Tr. at 829:23-25; 1095:15-20).

In sum, the Court finds based on the evidence introduced at trial that the defendants were not "interested" or acting in bad faith so as to lose the benefit of business judgment deference to their managerial decision in setting the rent under the Ninth Amendment to the ground lease based on the Leitner appraisal.

## II. The Application of the Business Judgment Rule Precludes Plaintiffs' Claims.

The Court finds that Defendants' decision to accept an appraisal based on Leitner's interpretation of the "subject to the lease" language of the ground lease was reasonable. Indeed, "[c]ase law has long recognized that 'valuations of land must take into consideration all encumbrances thereon, including restrictions as to its use, unless there is a clear provision to the contrary'" (*936 Second Ave. L.P. v Second Corporate Dev. Co., Inc.*, 10 NY3d 628, 632 [2008]). However one might characterize the "subject to the lease" language of the Lease, "clear" is not the word that first comes to mind. Thus, while one could certainly argue it would be plausible to interpret the language differently, as did MVS, the decision was well within the bounds of management's reasonable business judgment.

Furthermore, in view of the intra-familial dispute, Defendants took the further reasonable step of seeking input from all Norsel partners before proceeding to sign the Ninth Amendment to the lease (Jx3 ¶ 2, Tr. at 418:17-419:22). The Norsel Consent dated August 28, 2014, which approved the disputed ground rent, was signed by individuals representing nearly 90% of interests in Norsel (Jx47; Jx54; Tr. at 829:22-25; 1095:15-1096:1). Steinberg family members who executed the Norsel Consent did so after the 2013 Leitner Appraisal and 2012 Metropolitan Appraisal were made available for review, discussed by Michael Steinberg, and questions were taken (Tr. at 473:10-474:23; 559:19-560:21; 602:14-24; 603:20-604:16; 823:16-830:21; NYSCEF 629, at 19:3-22). Pokoik family members who executed the Norsel Consent included Gary Pokoik, Jonathan Pokoik, Jay Lieberman (each a manager of Norsel), and Justine Pokoik Hopkins, with whom Gary Pokoik discussed the appraisals at issue at the meeting (Tr. at 828:14-22; 1093:19-1094:19; 1095:15-1096:1; 1096:17-1097:6; NYSCEF 626, at 39:5-23, 101:8-23; Jx47). Accordingly, the Norsel Consent represents ratification of Defendants' conduct by the vast majority of the interest holders in this closely held family-owned business after significant opportunities to discuss both appraisals (Jx3 ¶ 2; Jx47; Jx54, Tr. at 418:17-419:22, 829:22-24), and with awareness of the dispute.[1] In these circumstances, the Court concludes that Defendants exercised their business judgment reasonably.

---

[1] Plaintiff's reliance on *Northmon Inv. Co. v Milford Plaza Assoc.* (284 AD2d 250 [1st Dept 2001]) to suggest that *unanimous* consent of the Norsel partners was required to approve the Ninth Amended lease (because the lease extended past the nominal 2016 expiration date of the partnership) is unavailing. Unlike in *Northmon*, here the partnership agreed in the Eighth Amendment to the Lease that the Tenant would have the option to renew the lease as many as three times, through 2043 if the lease was still in force in 2034 and the Tenant had met its obligations under the lease (Jx6 at 5-7). As noted above, the Eighth Amendment was signed in 1995 while Leon was still involved in management of the entities (*see* Jx6, at 1; *see also* Tr. at 26:4-9; 126:2-4, 141:13-16, 414:20-415:13; 420:1-9, 790:4-17, 1053:17-1054:10, 1061:23-1062:2), and there is no indication that any partner dissented from its terms. The Court does not

\*     \*     \*

In sum, Plaintiffs have failed to prove by a preponderance of the evidence (1) that Defendants were conflicted or interested such that their actions are beyond the purview of the business judgment rule, or (2) that Defendants' exercise of that business judgment was unreasonable. Accordingly, Defendants are entitled to judgment on both counts alleging breach of fiduciary duty.

## CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law, it is

**ORDERED** and **ADJUDGED** that Plaintiffs' First and Second causes of action for breach of fiduciary duty against Defendants Michael Steinberg and Jay Lieberman are **DISMISSED WITH PREJUDICE.**

This constitutes the Decision of the Court after trial. The Clerk is directed to enter judgment accordingly in favor of Defendants, with taxable costs upon submission by Defendants of a form of judgment and bill of costs.

20250205130244MCOHEN9F0AEBC5E344897AB4E863636DD38DD

**DATE: 2/5/2025**

**JOEL M. COHEN, JSC**

| Check One: | | X | Case Disposed | | Non-Final Disposition |
|---|---|---|---|---|---|
| Check if Appropriate: | | | Other (Specify _____ ) | | |

---

read *Northmon*, which has never been cited for the broad proposition upon which Plaintiffs rely, to preclude the Norsel partnership (supported by 90% of the partnership interests) from complying with the terms of the prior lease and continuing the business from which both sides of the family (including Plaintiffs) have continued to benefit in the years since 2016.

[* 14]