This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------

No. 54
In the Matter of Kenneth Cole
Productions, Inc., Shareholder
Litigation
--------------------------------
Erie County Employees Retirement
System,
            Appellant,
        v.
Michael J. Blitzer, et al.,
            Respondents,
Marlin Equities VII, LLC,
            Defendant.


            Lee D. Rudy, for appellant.
            Tariq Mundiya, for respondents Cole, et al.
            Andrew W. Stern, for respondents Blitzer, et al.
            Eastern New York Laborers' District Council, amicus
curiae.




STEIN, J.:

            In this shareholder class action challenging a going-

private merger, we adopt the standard of review recently

announced by the Delaware Supreme Court in Kahn v M & F Worldwide

Corp. (88 A3d 635, 648-649 [Del 2014]) (MFW).  Specifically, in

reviewing challenges to going-private mergers, New York courts

- 1 -

should apply the business judgment rule as long as certain shareholder-protective conditions are present; if those measures are not present, the entire fairness standard should be applied. Applying the MFW standard to the case before us, we affirm the dismissal of the complaint.

## I.

Kenneth Cole Productions, Inc. (KCP) is a New York corporation that designs and markets apparel, footwear, handbags and accessories. KCP was organized with two classes of common stock. As of June 2012, there were approximately 10,706,723 outstanding shares of Class A stock, which were traded on the New York Stock Exchange. Each Class A share entitled the holder to one vote, and defendant Kenneth D. Cole held approximately 46% of these shares. As of June 2012, there were approximately 7,890,497 outstanding shares of Class B stock, all of which were held by Cole. Class B shares entitled the holder to 10 votes, giving Cole approximately 89% of the voting power of the KCP shareholders. At the time in question, KCP's board of directors consisted of Cole and the other individual defendants herein. Defendants Michael J. Blitzer and Philip R. Peller were elected by Class A shareholders. Notably, defendants Denis F. Kelly and Robert C. Grayson held directorships voted on by both Class A and Class B shareholders, effectively giving Cole sole authority to fill these positions.

At a meeting held in February 2012, Cole proposed a

going-private merger by informing KCP's board of his intention to submit an offer to purchase the remainder of the outstanding Class A shares and, in effect, take the publicly-traded company private. After making this announcement, Cole left the meeting, and the board established a special committee to consider the proposal and negotiate any potential merger. The special committee consisted of directors Grayson, Kelly, Blitzer and Peller. On February 23, 2012, Cole made an initial offer of $15.00 per share. The offer was conditioned on approval by (1) the special committee, and, then, (2) a majority of the minority shareholders. At that time, Cole indicated that he had no desire to seek any other type of merger and, as a stockholder, would not approve of one. He also stated that, if the special committee did not recommend approval or the stockholders voted against the proposed transaction, his relationship with KCP would not be adversely affected.

Within a few days of Cole's announcement, several shareholders, including plaintiff Erie County Employees Retirement System, commenced separate class actions alleging, among other things, breach of fiduciary duty by Cole and the directors. The committee retained legal counsel and a financial advisor, and proceeded to negotiate the terms of the going-private merger with Cole. The committee asked Cole to increase his offer several times, which he ultimately raised to $15.50 and then $16.00. Within a week of the $16.00 offer, Cole reduced his

offer to $15.00, citing the alleged recent emergence of problems in the company and the economy.  Finally, after months of negotiations, the special committee again asked Cole to increase his offer and, thereafter, approved Cole's offer of $15.25 for each outstanding share of Class A stock, which it recommended to the minority shareholders.  Although the shareholder vote apparently occurred after an amended complaint was filed in this action,[1] and is not mentioned therein, 99.8% of the minority shareholders voted in favor of the merger.

In the amended complaint, plaintiff sought, among other things, (1) a judgment declaring that Cole and the directors had breached the fiduciary duties they owed to the minority shareholders, (2) an award of damages to the class, and (3) a judgment enjoining the merger.  Defendants separately moved to dismiss the complaint on the ground that it failed to state a cause of action.

Supreme Court granted defendants' motions and dismissed the complaint.  The court determined that the complaint "fail[ed] to set forth facts demonstrating a lack of independence on the part of any of the . . . individual defendants."  Further, the court held that "the complaint d[id] not adequately allege any facts that, if true, demonstrate[d] that the decision not to seek

---

[1] After the special committee recommended that Cole's $15.25 offer be accepted, plaintiff amended its complaint to reflect what had occurred since the action was commenced.  This action was ultimately consolidated with five other class actions.

other bids constituted a breach of fiduciary duty," as "plaintiff[] acknowledge[d] that the special committee negotiated with Cole over a period of months and obtained an increase in the price he would pay . . . where the original price represented a premium over the stock's most recent selling price."  Ultimately, the court reasoned that, "absent a showing of specific unfair conduct by the special committee, the [c]ourt will not second guess the [special] committee's business decisions in negotiating the terms of [the] transaction."  The court further held that "the complaint d[id] not contain adequate statements regarding a breach" of Cole's fiduciary duty.  Plaintiff appealed, on behalf of itself and the class.

The Appellate Division affirmed, holding that, "[c]ontrary to plaintiff's claim, the motion court was not required to apply the 'entire fairness' standard to the transaction" (122 AD3d 500, 500 [1st Dept 2014]).  The Court noted that, unlike in Alpert v 28 Williams St. Corp. (63 NY2d 557 [1984]), "the merger in the case at bar required the approval of the majority of the minority (i.e., non-Cole) shareholders" (122 AD3d at 500).  In addition, Cole, an interested party, "did not participate when [KCP]'s board . . . voted on the merger," and plaintiff did "not allege[] that the remaining members of the board . . . were self-interested" (id.).  The Court held that "there [were] no allegations sufficient to demonstrate that the members of the board or the special committee did not act in good

faith or were otherwise interested" (id. at 501).  This Court
granted plaintiff leave to appeal (25 NY3d 909 [2015]).

## II.

The primary issue before us is what standard should be
applied by courts reviewing a going-private merger that is
subject from the outset to approval by both a special committee
of independent directors and a majority of the minority
shareholders.  Plaintiff urges that we apply the entire fairness
standard, which places the burden on the corporation's directors
to demonstrate that they engaged in a fair process and obtained a
fair price.  Defendants seek application of the business judgment
rule, with or without certain conditions.  We are persuaded to
adopt a middle ground.  Specifically, the business judgment rule
should be applied as long as the corporation's directors
establish that certain shareholder-protective conditions are met;
however, if those conditions are not met, the entire fairness
standard should be applied.

We begin with the general principal that courts should
strive to avoid interfering with the internal management of
business corporations.  To that end, we have long adhered to the
business judgment rule, which provides that, where corporate
officers or directors exercise unbiased judgment in determining
that certain actions will promote the corporation's interests,
courts will defer to those determinations if they were made in
good faith (see 40 W. 67th St. v Pullman, 100 NY2d 147, 153

[2003]; Chelrob, Inc. v Barrett, 293 NY 442, 459-460 [1944]).

The doctrine is based, at least in part, on a recognition that:

courts are ill equipped to evaluate what are essentially business

judgments; there is no objective standard by which to measure the

correctness of many corporate decisions (which involve the

weighing of various considerations); and corporate directors are

charged with the authority to make those decisions (see Auerbach

v Bennett, 47 NY2d 619, 630-631 [1979]).  Hence, absent fraud or

bad faith, courts should respect those business determinations

and refrain from any further judicial inquiry (see id. at 631).

We have, therefore, held that the substantive determination of a

committee of disinterested directors is beyond judicial inquiry

under the business judgment rule, but that "the court may inquire

as to the disinterested independence of the members of that

committee and as to the appropriateness and sufficiency of the

investigative procedures chosen and pursued by the committee"

(id. at 623-624).

A freeze-out merger is typical of situations in which a

director's loyalty may be divided or compromised, thereby calling

into question the applicability of the business judgment rule.

In such a merger, the majority stock owner or group in control

attempts to freeze out the interests of minority shareholders.

There are three main types of freeze-out mergers: (1) two-step

mergers, in which an outside investor purchases control of the

majority shares of a target company, then uses that control to

merge the target with a second company, thereby freezing out the minority shareholders of the target and forcing a cash-out of their shares; (2) parent-subsidiary mergers; and (3) going-private mergers, in which the majority shareholder seeks to remove public investors and gain ownership of the entire company.

This Court's seminal decision regarding freeze-out mergers is Alpert v 28 Williams St. Corp. (63 NY2d 557 [1984]). In that case, we recognized that, where there are common directors or majority ownership between the parties involved in a transaction, "the inherent conflict of interest and the potential for self-dealing requires careful scrutiny of the transaction" (id. at 570). In reviewing a two-step merger in Alpert, we held that while, "[g]enerally, the plaintiff has the burden of proving that the merger violated the duty of fairness, . . . when there is an inherent conflict of interest, the burden shifts to the interested directors or shareholders to prove good faith and the entire fairness of the merger" (id.; see Chelrob, Inc., 293 NY at 461-462). This "entire fairness" standard has two components: fair process and fair price (see Alpert, 63 NY2d at 569-570). The fair process aspect concerns timing, structure, disclosure of information to independent directors and shareholders, how approvals were obtained, and similar matters (see id. at 570-571). The fair price aspect can be measured by whether independent advisors rendered an opinion or other bids were considered, which may demonstrate the price that would have been

established by arm's length negotiations (see id. at 571).
Considering the two components, the transaction is viewed as a
whole to determine if it is fair to the minority shareholders
(see id. at 567; see also Kahn v Lynch Communication Sys., Inc.,
638 A2d 1110, 1115 [Del 1994]).

In Alpert, we specifically stated that we were not
deciding whether the circumstances that would satisfy fiduciary
duties in a two-step merger would be the same for other types of
mergers (see Alpert, 63 NY2d at 567 n 3). Thus, that decision is
not dispositive of the standard for reviewing a going-private
merger, such as the one now before us. The present case is also
distinguishable because, in Alpert, there was no independent
committee and no minority shareholder vote.

The parties here debate whether we should apply the
entire fairness standard, as in Alpert, or, alternatively,
whether we should adopt the test recently established by the
Delaware Supreme Court in Kahn v M & F Worldwide Corp. (88 A3d
635, 648-649 [Del 2014]) (MFW). In MFW, a controlling
shareholder sought to purchase all of the shares of stock and
take the corporation private, but made the proposal contingent
from the outset upon two shareholder-protective measures --
negotiation and approval by a special committee of independent
directors, and approval by a majority of shareholders that were
unaffiliated with the controlling shareholder (see id. at 638).
As in the case before us, the controlling shareholder also made

it clear that it was not interested in selling any of its shares, would not vote in favor of any alternative sale or merger and, if the merger was not recommended, its future relationship with the company -- including its desire to remain a shareholder -- would not be adversely affected (see id. at 641).

In MFW, the question before the Delaware Supreme Court was framed as "what standard of review should apply to a going private merger conditioned upfront by the controlling stockholder on approval by both a properly empowered, independent committee and an informed, uncoerced majority-of-the-minority vote" (id. at 639 [internal quotation marks omitted]).  We are presented with the same question here.  In prior cases, the Delaware Supreme Court had applied the entire fairness standard when reviewing mergers with interested directors, although the court had created a burden shift -- placing the burden on the objecting minority shareholders -- in situations in which the interested director required approval by an independent committee or a majority of the minority shareholders (see Americas Mining Corp. v Theriault, 51 A3d 1213, 1240 [Del 2012]; Kahn v Tremont Corp., 694 A2d 422, 428-429 [Del 1997]; Kahn v Lynch Communication Systems, Inc., 638 A2d at 1115-1116).  Never before had that Court addressed a situation in which both of those protections were present (see MFW, 88 A3d at 642).

The Delaware Supreme Court opined in MFW that the opportunity for review under the business judgment rule -- as

opposed to the entire fairness standard -- created a strong incentive for controlling shareholders to provide a structure for freeze-out mergers that is most likely to protect the interests of minority shareholders, because when both protections are in place, the situation replicates an arm's length transaction and supports the integrity of the process (see id. at 643).  That Court ultimately held that "business judgment is the standard of review that should govern mergers between a controlling stockholder and its corporate subsidiary, where the merger is conditioned ab initio upon both the approval of an independent, adequately-empowered Special Committee that fulfills its duty of care; and the uncoerced, informed vote of a majority of the minority stockholders" (id. at 644).  The Court articulated a number of reasons for the adoption of this new standard, including that: where the controlling shareholder clearly disabled itself from using its control to dictate the outcome, the merger acquired the characteristics of "third-party, arm's length mergers" that are reviewed under the business judgment rule; "the dual procedural protection merger structure optimally protects the minority stockholders in controller buyouts"; it is consistent with the tradition of courts deferring to informed decisions by impartial directors, especially when approved of by disinterested and informed stockholders; and it will provide an incentive to create structures that best protect minority shareholders (id.).  The standard was summarized as follows:

"in controller buyouts, the business judgment standard of review will be applied <u>if and only if</u>: (i) the controller conditions the procession of the transaction on the approval of both a Special Committee and a majority of the minority stockholders; (ii) the Special Committee is independent; (iii) the Special Committee is empowered to freely select its own advisors and to say no definitively; (iv) the Special Committee meets its duty of care in negotiating a fair price; (v) the vote of the minority is informed; and (vi) there is no coercion of the minority" (<u>id.</u> at 645).

We now adopt that standard of review for courts reviewing challenges to going-private mergers. The standard set forth in <u>MFW</u> reinforces that the business judgment rule is our general standard of review of corporate management decisions, and is consistent with this Court's statement in <u>Auerbach</u> that the substantive determination of a committee of disinterested directors is beyond judicial inquiry under the business judgment rule, but that courts "may inquire as to the disinterested independence of the members of [a special] committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee" (47 NY2d at 623-624). While the business judgment rule is deferential to corporate boards, minority shareholders are sufficiently protected by <u>MFW</u>'s conditions precedent to the application of that standard in going-private mergers. Overall, the <u>MFW</u> standard properly considers the rights of minority shareholders -- to obtain judicial review of transactions involving interested parties, and to proceed to trial where there is adequate proof

that those interests may have affected the transaction -- and balances them against the interests of directors and controlling shareholders in avoiding frivolous litigation and protecting independently-made business decisions from unwarranted judicial interference.

According to the Delaware Supreme Court, for purposes of this rule, a complaint is sufficient to state a cause of action for breach of fiduciary duty -- and the plaintiff may proceed to discovery -- if it alleges "a reasonably conceivable set of facts" showing that any of the six enumerated shareholder-protective conditions did not exist (MFW, 88 A3d at 645). Conclusory allegations or bare legal assertions with no factual specificity are not sufficient, and will not survive a motion to dismiss (see Godfrey v Spano, 13 NY3d 358, 373 [2009]; Health-Loom Corp. v Soho Plaza Corp., 209 AD2d 197, 198 [1st Dept 1994] [conclusory allegations that two directors control the remaining directors are insufficient; a complaint must contain specific allegations of coercive power over others or that interested or controlled directors constitute a majority]). Mere speculation cannot support a cause of action for breach of fiduciary duty (see e.g. Kassover v Prism Venture Partners, LLC, 53 AD3d 444, 450 [1st Dept 2008]). If the pleading requirements are met, in order to defeat summary judgment, a plaintiff must then demonstrate that there is a question of fact as to the establishment or efficacy of any of the enumerated conditions

designed to protect the minority shareholders (see MFW, 88 A3d at 645-646). Finally, if the evidence demonstrates that any of the protections were not in place, then the business judgment rule is inapplicable and the entire fairness standard applies.

Reviewing the complaint here under the MFW standard, we conclude that the courts below properly determined that the allegations do not withstand defendants' motions to dismiss. Plaintiff did not sufficiently and specifically allege that any of MFW's six enumerated conditions were absent from the merger here. Beginning with the first condition, plaintiff concedes that Cole conditioned the merger, from the outset, upon approval by both a special committee of independent directors and a majority of the minority shareholders.

Next, in challenging the independence of the special committee, plaintiff alleged that Cole and/or his personally selected directors were responsible for nominating and electing the committee members to KCP's board. In this regard, the question is whether a director is beholden to the controlling party or so under that party's influence that the director's discretion would be compromised (see MFW, 88 A3d at 648-649). Friendships, traveling in the same circles, some financial ties, and past business relationships are not enough to rebut the presumption of independence; the ties must be material in the sense that they could affect impartiality (see id. at 649). None of the allegations of the complaint, even if true, indicate that

any of the members of the special committee engaged in fraud, had a conflict of interest or divided loyalties, or were otherwise incapable of reaching an unbiased decision regarding the proposed merger (compare Marx v Akers, 88 NY2d 189, 202 [1996]).

As to the third MFW condition, the complaint does not allege that the special committee lacked the freedom to reject Cole's offer or was prevented from hiring its own advisors, nor does it dispute that the committee did, in fact, select its own financial advisors and legal counsel.  Plaintiff's speculation that the committee merely submitted to Cole's wishes is insufficient to state a cause of action for breach of fiduciary duty, particularly in view of Cole's statement at the time of his initial proposal that, if the committee did not recommend approval or the minority shareholders did not vote in favor of the proposed transaction, such a determination "would not adversely affect [his] . . . relationship" with KCP.

Turning to the fourth condition, while the complaint contains various allegations suggesting that the special committee could have been more effective in negotiating a higher buy-out price, none of those allegations are sufficient to support more than conclusory assertions that the committee failed to meet its duty of care in negotiating a fair price. Significantly, the complaint fails to allege any basis to conclude that the committee had an incentive to accept an inadequate price without meaningful negotiations or that it

engaged in any unfair conduct.  Additionally, the final price of $15.25 per share was higher than the original offer, was within the range of value determined by the committee's independent financial analysts, was recommended by the committee's independent legal counsel and financial advisors, and was higher than the stock's price prior to Cole's announcement that he intended to take the company private.[2]

Regarding the fifth condition, the complaint lacks any specific challenges to the information contained in, or allegedly omitted from, the proxy statement provided to the minority shareholders prior to the vote, such that it could be said that the shareholders were not informed (see Kimeldorf, 309 AD2d at 158).  Finally, plaintiff did not allege any coercion of the minority shareholders in relation to the vote.

Because plaintiff has not sufficiently alleged that any of the six enumerated MFW conditions were absent, the business judgment standard of review applies to the transaction at issue (see MFW, 88 A3d at 645).  Pursuant to that standard, absent fraud or bad faith, we defer to the determinations of the special committee and the KCP board of directors in recommending and approving the merger (see Auerbach, 47 NY2d at 630-631).

---

[2] Although the complaint cites rising KCP stock prices and positive financial analyses following Cole's announcement that he planned to take the company private, defendants correctly note that this information cannot be used to properly value the stock because those figures reflect an artificial increase in the price due to the prospect of the merger.

Inasmuch as no fraud or bad faith has been alleged here, the complaint was properly dismissed. Accordingly, the Appellate Division order should be affirmed, with costs.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order affirmed, with costs. Opinion by Judge Stein. Judges Pigott, Rivera, Abdus-Salaam, Fahey and Garcia concur. Chief Judge DiFiore took no part.

Decided May 5, 2016