Matter of The People of The State of New York v The Lutheran Care Network, Inc. (2018 NY Slip Op 08727)





Matter of The People of The State of New York v The Lutheran Care Network, Inc.


2018 NY Slip Op 08727


Decided on December 20, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 20, 2018

526214

[*1]In the Matter of THE PEOPLE OF THE STATE OF NEW YORK, by the Attorney General of the State of New York, Appellant,
v
THE LUTHERAN CARE NETWORK, INC., et al., Respondents.

Calendar Date: October 9, 2018

Before: McCarthy, J.P., Devine, Mulvey, Rumsey and

 Pritzker, JJ.

Barbara D. Underwood, Attorney General, Albany (Jonathan D. Hitsous of counsel), for appellant.
Carter, Conboy, Case, Blackmore, Maloney & Laird, PC, Albany (Michael J. Murphy of counsel) and O'Connell & Aronowitz, PC, Troy (Daniel J. Tuczinski of counsel) and Stradley Ronon Stevens & Young, LLP, Washington, DC (Mark Chopko admitted pro hac vice), for The Lutheran Care Network, Inc. and others, respondents.
Dreyer Boyajian LLP, Albany (Joshua R. Friedman of counsel), for Frank R. Tripodi and another, respondents.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a judgment of the Supreme Court (Ryba, J.), entered March 30, 2017 in Albany County, which partially dismissed petitioner's application, in a proceeding pursuant to CPLR article 4, to, among other things, enjoin respondent The Lutheran Care Network, Inc. from exercising unlawful operational control over its affiliates.
Respondent The Lutheran Care Network, Inc., formerly known as Wartburg Lutheran Services, Inc. (hereinafter TLCN), is a New York not-for-profit corporation that does not directly deliver any services; rather, it acts through several not-for-profit corporations of which it is the sole member (hereinafter affiliates), including Coburg Village, Inc., which operates a private-pay senior living facility in the Town of Clifton Park, Saratoga County. In 2014, the Board of Directors of TLCN voted to replace the members of the Boards of Directors of Coburg and TLCN's other affiliates with members of TLCN's own Board of Directors. Later that year, a dispute between residents of the Coburg facility and TLCN representatives resulted in a complaint to the Attorney General, who began investigating Coburg and TLCN for possible violations of the Not-For-Profit Corporation Law. Petitioner, by the Attorney General, [*2]commenced this proceeding against TLCN, certain individual directors of TLCN,[FN1] and two of TLCN's officers — respondents Frank R. Tripodi, TLCN's chief executive officer, who was also a director, and Laraine Fellegara, TLCN's chief financial officer. The petition alleged that respondents violated state law and TLCN and Coburg bylaws by impermissibly transferring funds from Coburg to TLCN and by requiring that Coburg pay unreasonable management fees to TLCN. Among other relief, petitioner sought judgment removing respondents from exercising any control over Coburg, ordering that TLCN repay Coburg all funds found to have been illegally transferred from Coburg to TLCN, and ordering that TLCN adopt a conflict of interest policy. After respondents answered, Supreme Court directed TLCN to adopt a conflict of interest policy and otherwise dismissed the petition. Petitioner appeals.
The petition asserts four causes of action and seeks relief based, as relevant here, on allegations that respondents breached their fiduciary duties to Coburg and improperly engaged in related party transactions by exercising operational control over Coburg in a manner inconsistent with its purposes and in violation of law. In a special proceeding commenced under CPLR article 4, "[t]he court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised" by applying the same standards that apply on a motion for summary judgment (CPLR 409 [b]; see Matter of National Enters., Inc. v Clermont Farm Corp., 46 AD3d 1180, 1183 [2007]; Matter of People v Applied Card Sys., Inc., 27 AD3d 104, 106 [2005], lv dismissed 7 NY3d 741 [2006]). In support of the petition, petitioner submitted an affirmation from Laura A. Sprague, the Assistant Attorney General who investigated TLCN, which had 60 exhibits annexed thereto that were comprised of copies of documents that had been obtained from respondents pursuant to subpoena and deposition transcripts. Initially, we note that Supreme Court erred by disregarding Sprague's affirmation on the basis that it was made by an attorney who had not established that she was qualified to render an opinion. By adopting this unduly narrow view of Sprague's affirmation, Supreme Court improperly disregarded the evidence contained in the numerous exhibits that were annexed to the affirmation, which, in that regard, served as a vehicle for the submission of documentary evidence (see Warner v Kain, 162 AD3d 1384, 1385 n 1 [2018]; State of New York v Grecco, 43 AD3d 397, 399 [2007]).
In the first cause of action, petitioner seeks, as relevant here, an injunction enjoining TLCN from exercising operational control over any affiliate in a manner inconsistent with the purposes of the affiliate or in violation of law [FN2]. Respondents have denied that there is any potential for any future harm. In that regard, they assert that TLCN has implemented procedures to ensure future compliance with applicable law, thereby rendering moot nearly every aspect of petitioner's demands of TLCN with respect to future conduct. "As [TLCN] is already obligated to follow the law and there is nothing in the record to suggest that it will not do so, the extraordinary relief of an injunction is unnecessary and inappropriate" (Matter of Wilkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1092 [2008] [internal quotation marks and citations omitted]). Thus, we conclude that Supreme Court acted properly in ordering TLCN to adopt a conflict of interest policy and in otherwise dismissing the first cause of action.
Our review of the remaining causes of action must be guided by the principle that, inasmuch as Coburg is an independent corporation, TLCN may not operate Coburg in a manner inconsistent with Coburg's purpose, nor engage in related party transactions without complying with the relevant provisions of the Not-For-Profit Corporation Law. In the second and third causes of action, petitioner alleges that respondents repeatedly violated the fiduciary duties owed to Coburg and, on that basis, seeks permanent removal of respondents from their positions as a member of Coburg, or as directors and officers of Coburg. Petitioners submitted evidence [*3]making a prima facie showing that TLCN violated N-PCL 508 and Coburg's certificate of incorporation by applying Coburg's surpluses for the benefit of other TLCN affiliates. As relevant here, Coburg's certificate of incorporation states that Coburg's purpose is "to meet special housing needs of elderly persons and to serve the special physical needs which commonly attend advanced age . . . by planning, developing, organizing, constructing, acquiring, altering, reconstructing, rehabilitating, owning, operating and maintaining safe, sanitary, independent living facilities." Coburg is entitled to make an incidental profit from operating such living facilities, provided that "[a]ll such incidental profits shall be applied to the maintenance, expansion or operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation" (N-PCL 508). Coburg's certificate of incorporation complies with N-PCL 508 by providing that "[n]o part of the net earnings of [Coburg] shall inure to the benefit of any member, trustee, director, or officer of [Coburg] or any private individual, except that reasonable compensation may be paid for services rendered to or for [Coburg]."
Petitioner also submitted transcripts of the deposition testimony of Tripodi and Fellegara, who both testified that the affiliates' boards of directors were only advisory and that Coburg's annual budgets were approved by TLCN's board of directors [FN3]. Sanford Ira Roth, who had served as a director of Coburg and TLCN, testified that as the proposed 2014 budget for Coburg was developed, it was revised twice to increase the budgeted surplus from $152,000 to $348,000 to $1 million. Tripodi explained that the large surplus was necessary to satisfy the terms of the loan agreement with a lender that had financed an expansion of the facilities at Coburg. He further testified that the large surplus was intended to be used to offset losses anticipated to be incurred by other affiliates, specifically stating that "there are several [affiliates] that lose money[, a]nd we use [Coburg's surplus] to offset those losses." Respondent Alec Davis, who had served as director of both Coburg and TLCN, similarly testified that Coburg had historically generated significant surpluses that were transferred to other TLCN affiliates.
Petitioner submitted evidence to support its further allegations that respondents had also diverted Coburg's incidental profits to TLCN by unilaterally imposing unreasonable management fees in related party transactions that did not comply with the Not-For-Profit Corporation Law (see N-PCL 715). Tripodi testified that the management fees paid by affiliates were TLCN's sole source of revenue and that TLCN determined the amount of management fees to be paid by each affiliate by dividing the total amount of revenue that TLCN needed to operate among the affiliates based upon the amount of work that TLCN employees did for each affiliate. Tripodi acknowledged, however, that the affiliates were not provided with any accounting of the services that were provided in exchange for the management fees and that there were no agreements establishing those fees [FN4]. Rather, the management fees were included in the budget of each affiliate that was approved by TLCN's board of directors. Coburg's annual budgets for 2013, 2014 and 2015 included management fees of $614,914, $652,586 and $659,596, respectively, which Fellegara testified accounted for 35% of TLCN's management fees — the highest of any of the 11 affiliates. Tripodi also testified that affiliates that could not afford their management fee simply did not pay. Further, according to petitioner, TLCN also collected additional management fees from Coburg by reclassifying a $500,000 loan payment as a management fee. TLCN had made a loan of $3,500,000 to Coburg for an expansion project that was repayable in annual installments of $500,000. TLCN reclassified the loan payment that Coburg made in 2012 as a management fee to avoid violating the terms of a loan agreement with another lender, which prohibited repayment of loans between related parties. TLCN did not reduce the loan balance, and it is unclear from the record whether TLCN credited Coburg with payment of $500,000 toward the budgeted management fee.
Genuine issues of material fact exist as to whether respondents violated their duty to Coburg by improperly utilizing its surplus to benefit TLCN and its other affiliates and by engaging in related party transactions that were not in Coburg's best interest. Fellegara denied that Coburg's surpluses were transferred to other affiliates. She alleged that Coburg retained substantial cash surpluses and explained that a portion of the surpluses was used to repay the $3,500,000 loan. Respondents also proffered the affidavit of Philip Kanyuk, a certified public accountant, who concluded that there was "a sound basis for the management fees allocated to each [affiliate]" from 2012 through 2015.
The fourth cause of action seeks rescission of management fees paid to TLCN by Coburg after July 1, 2014 — the effective date of the amendment to N-PCL 715 — and an accounting of such amounts. The Attorney General is authorized to seek rescission of related party transactions made in violation of the Not-For-Profit Corporation Law (see N-PCL 715 [f]). Further, the Attorney General may compel an accounting of corporate assets that were improperly transferred and may seek to set aside such transactions (see N-PCL 720 [a], [b]). The fourth cause of action seeks relief that is dependent upon resolution of issues of fact related to whether respondents engaged in improper related party transactions or otherwise transferred Coburg's surplus to benefit TLCN and its other affiliates. Thus, the determination on the fourth cause of action must await resolution of issues of fact and, therefore, dismissal of this cause of action was improper.
We further conclude that Supreme Court erred by applying the business judgment rule, "which provides that, where corporate officers or directors exercise unbiased judgment in determining that certain actions will promote the corporation's interests, courts will defer to those determinations if they were made in good faith" (Matter of Kenneth Cole Prods., Inc., Shareholder Litig., 27 NY3d 268, 274 [2016]; see M & M Country Store, Inc. v Kelly, 159 AD3d 1102, 1103 [2018]). However, the business judgment rule has no place where corporate officers or directors take actions that exceed their authority under the relevant corporate bylaws (see Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 565 [1985]; Brantley v Municipal Credit Union, 60 AD3d 551, 552 [2009]), or where they make decisions affected by an inherent conflict of interest (see Matter of Kenneth Cole Prods., Inc., Shareholder Litig., 27 NY3d at 274-275; Auerbach v Bennett, 47 NY2d 619, 631 [1979]; Wolf v Rand, 258 AD2d 401, 404 [1999]). There are issues of fact in the present record that preclude application of the business judgment rule, specifically regarding whether respondents exceeded their authority by improperly utilizing Coburg's surplus to benefit TLCN and its other affiliates and by engaging in related party transactions that were not in Coburg's best interest.
McCarthy, J.P., Devine, Mulvey and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the second, third and fourth causes of action; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The remaining individual respondents each served as a current or former director of TLCN. 

Footnote 2: Supreme Court granted judgment on the first cause of action to the extent of ordering TLCN to implement a conflict of interest policy in compliance with the Not-For-Profit Corporation Law (see N-PCL 715-a). Respondents do not challenge this determination and represent that the required policies have been adopted.

Footnote 3: Their testimony was corroborated by a 2013 email from respondent John Melosh, who was then Chair of TLCN's Board of Directors, to respondent Alec Davis, who was then a director of Coburg.

Footnote 4: Respondents did not provide any documentation in response to petitioner's subpoena regarding the time spent by TLCN's employees on the work of each affiliate.