White Mgt. Corp. v Aley (2023 NY Slip Op 50100(U))

[*1]

White Mgt. Corp. v Aley

2023 NY Slip Op 50100(U)

Decided on February 9, 2023

Supreme Court, Albany County

Platkin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 9, 2023
Supreme Court, Albany County

White Management Corp., M & W FOODS, INC., LOG JAM OF GLENS FALLS, INC., BOUNTIFUL BREAD, INC., PLATTSBURGH TACO INC., KODIAK CREAMERY, INC., NORPCO RESTAURANT, INC., ALBANY-PLATTSBURGH UNITED CORP., CCB REALTY LLC and DAVID R. WHITE, Plaintiffs,

against
Ray E. Aley, III, Defendant.

Index No. 904783-20

Feeney and Centi
Attorneys for Plaintiffs
(Daniel J. Centi, of counsel)
127 Great Oaks Blvd.
Albany, New York 12203
Whiteman Osterman & Hanna LLP
Attorneys for Defendant
(William S. Nolan and Gabriella R. Levine, of counsel)
One Commerce Plaza, Suite 1900
Albany, New York 12260

Richard M. Platkin, J.

Plaintiffs White Management Corp. ("White Management"), M & W Foods, Inc. ("M & W"), Log Jam of Glens Falls, Inc., Bountiful Bread, Inc., Plattsburgh Taco Inc. ("Plattsburgh Taco"), Kodiak Creamery, Inc., Norpco Restaurant, Inc., Albany-Plattsburgh United Corp. and CCB Realty LLC (collectively, "White Companies"), together with David R. White ("White"), bring this commercial action against defendant Ray E. Aley, III. 
Plaintiffs allege that defendant, who is White's son-in-law and a former shareholder, [*2]director and employee of M & W and Plattsburgh Taco, disseminated confidential financial information to an industry competitor. Plaintiffs seek to recover compensatory damages of $2 million under theories sounding in breach of fiduciary duty and faithless servant.
Following the substantial completion of discovery over about two years, defendant moves for summary judgment dismissing plaintiffs' second amended complaint in its entirety (see NYSCEF Doc No. 39 ["Complaint"]). Plaintiffs oppose the motion and cross-move for partial summary judgment on their claims for breach of fiduciary duty and faithless servant.
I. BACKGROUND
A. The Parties and Their Business Dealings
The White Companies own and operate approximately thirty restaurants in upstate New York (see NYSCEF Doc No. 96 ["R-DSOMF"], ¶¶ 4-5). White has been their controlling shareholder/member at all pertinent times (see Complaint, ¶¶ 6-7). 
White Management, of which White is the sole shareholder, manages the payroll and accounts of the other White Companies (see R-DSOMF, ¶ 1; see also Complaint, ¶ 10). White Management has no ownership interest in the other White Companies, and none of the other White Companies has an interest in White Management (see R-DSOMF, ¶¶ 2-3). 
As the individual with control over the White Companies, "White has appointed members of his family to key positions . . . , and he has provided that the shares or membership interests therein are exclusively or primarily owned by himself and his family members so as to maintain the White Companies as a family business" (Complaint, ¶ 8). 
Consistent with this practice, White asked defendant to manage the restaurants owned and operated by M & W in or around 2000, following the termination of White's brother-in-law from the position (see R-DSOMF, ¶¶ 5-8). Defendant, who possessed significant experience in the restaurant industry, accepted the offer and became vice-president of operations of M & W and a minority shareholder (see id., ¶ 9). 
Defendant also became an employee, director, and minority shareholder of Plattsburgh Taco (see NYSCEF Doc No. 42 ["Answer"], ¶ 2; R-DSOMF, ¶¶ 12-13, 20). Defendant was not an employee, director, or shareholder of any of the other White Companies, but his salary was paid to him by White Management through funds provided by M & W and Plattsburgh Taco (see R-DSOMF, ¶¶ 10, 12, 14). 
Throughout most of his affiliation with the White Companies, defendant "also owned and operated Aley Restaurant Management, LLC ('ARM')," which he started in 2005 with his wife Cheryl Aley, who is White's daughter (id., ¶¶ 22-27). ARM owned and operated seven Dunkin' Donuts restaurants and one KFC (see id., ¶¶ 24, 54; see also NYSCEF Doc No. 141, ¶ 5). 
The White Companies established a computer system in or around 2000, known as the "White Network," to store financial information, including payroll, accounting, and employee information (see R-DSOMF, ¶¶ 30, 32). The White Network later was used to "store[] information pertaining to ARM, including payroll and employment information for restaurant employees" (id., ¶ 33). 
In 2017, defendant "sought to downsize his role in the White Companies and, specifically, in M & W" (id., ¶¶ 50-51). To that end, White and the Aleys engaged a business broker, Andrew Hirshon, to sell the assets associated with the 11 Dunkin' Donuts restaurants owned by M & W and the seven Dunkin' restaurants owned by ARM (collectively, "Dunkin' Network") (see id., ¶ 52, 54). 
The only potential purchaser for the Dunkin' Network was Ever Santana, an individual engaged in the restaurant business (see id., ¶ 56). In or around May 2018, Santana signed a confidentiality and nondisclosure agreement to receive information "relative to the business and affairs of the [Dunkin' Network], as well as other information that may be pertinent to the sale of the business" (Nolan Aff., Ex. O; see R-DSOMF, ¶ 57). 
From May 2018 to April 2019, White, defendant and Santana negotiated towards Santana's purchase of the Dunkin' Network (see R-DSOMF, ¶¶ 58-59). During this period, the White Companies and ARM frequently shared with Santana financial information pertaining to [*3]the 18 Dunkin' restaurants, including information concerning ground leases, weekly sales, labor costs, cash flow and earnings (see id., ¶ 60).
In February 2019, Santana offered to purchase the Dunkin' Network for $17 million (see id., ¶ 61). Upon learning of the offer, White allegedly informed the Aleys that he would "quash[] the deal" (id., ¶¶ 62-64; see also id., ¶¶ 68-69). Although the Aleys held a majority interest in M & W, White claimed an irrevocable proxy over his daughter's shares, which constituted the bulk of their holdings (see id., ¶¶ 53, 63). White acknowledges that he decided against moving forward with the Santana deal and informed the Aleys that he would purchase their interest in the deal for the same net price as the Aleys would have received from Santana (see id., ¶¶ 62-64, 67). As a result, Santana's purchase offer was rejected (see id., ¶ 65).
On or about June 5, 2019, White and the Aleys entered into a letter of intent contemplating a transaction whereby White would purchase the Aleys' shares of M & W (see id., ¶¶ 70-73, 77 ["June 2019 LOI"]). As part of this transaction, the seven Dunkin' stores owned by ARM would be transferred to M & W (see id., ¶¶ 74-75). 
The June 2019 LOI included a "no-shop provision," by which the Aleys agreed that they would "not initiate or conclude . . . any negotiations with any corporation, limited liability company, person or other entity regarding the sale of the shares recited herein" (id., ¶ 76). However, the only ownership interest recited in the letter of intent was that of M & W, although the "spirit and intent" of the agreement was "as if M & W was the owner of and sold eighteen (18) Dunkin' Donuts stores and Commissary" (id., ¶¶ 77-78).
The parties signed a revised letter of intent on July 29, 2019 (see id., ¶ 83 ["July 2019 LOI"]). Like its predecessor, the July 2019 LOI "contained a 'no-shop' provision prohibiting the negotiation of the 'sale of the shares recited [t]herein'" (id., ¶ 84) but recited only the M & W shares (see id., ¶ 85).
According to the Aleys, their dealings with White were fraught with intra-familial tension (see id., ¶¶ 81-82). "In June 2019, as family hostilities increased, [defendant] began to fear that the deal with [White] . . . was not going to come to fruition" (id., ¶ 86). Defendant therefore reached out to Santana to inquire whether he remained interested in purchasing ARM's seven Dunkin' restaurants (see id., ¶ 87). In connection with these discussions, Santana requested that defendant supply him with additional financial information relating to ARM (see id., ¶ 91). 
Plaintiffs allege that, in responding to Santana's requests, defendant "breached his fiduciary duties . . . by utilizing his credentials to gain access to the White Network . . . and disclosing [the White Companies' financial] information" to Santana (Complaint, ¶¶ 25, 28).
Plaintiffs do not take issue with defendant's disclosure of ARM's financial information, but the emails that defendant transmitted to Santana also included financial information pertaining to M & W and Plattsburgh Taco, entities to whom defendant owed fiduciary duties as an employee, officer and director. "The information included identification of plaintiffs' loans or debts, and amounts, purposes, terms, maturities, and balances thereof, together with debt service amounts, identification of creditors, equipment purchases and locations, leaseholds, rents, and lease expirations, and budget, expenses, sales, labor and productivity data" (id., ¶ 27).[FN1]

Defendant admits to disclosing M & W and Plattsburgh Taco's financial information to [*4]Santana, but contends that it was inadvertent and that he had no intention of providing Santana with anything other than ARM's financial information (see R-DSOMF, ¶¶ 92-105).
Defendant further contends that plaintiffs suffered no loss, injury, or damages from the inadvertent disclosure, and this lawsuit merely is a vindictive action by White against his son-in-law and daughter (see id., ¶¶ 127-137, 148-154, 165-183). Defendant emphasizes that the Aleys and White consummated an agreement in September 2019 whereby ARM's seven Dunkin' restaurants were transferred to M & W, and White acquired the Aleys' shares of M & W (see id., ¶¶ 138-139; Ray Aley Aff., Ex. O ["SPA"]). 
B. This Lawsuit
Plaintiffs commenced this action on July 24, 2020 (see NYSCEF Doc No. 1), and defendant joined issue on September 25, 2020 (see NYSCEF Doc No. 3). The parties then engaged in extensive discovery over about two years, during the course of which plaintiffs twice amended their complaint (see NYSCEF Doc Nos. 32, 41).
The operative Complaint alleges six causes of action, which allege in substance: (1) defendant's disclosure to Santana is actionable as a breach of fiduciary duty and under the faithless servant doctrine; (2) defendant breached an oral agreement to maintain the confidentiality of information on the White Network; (3) White and White Management are entitled to recover under the doctrine of promissory estoppel because they relied to their detriment on defendant's promise not to disclose confidential information; and (4) plaintiffs are entitled to an equitable accounting (see Complaint, ¶¶ 23-61). Plaintiffs seek compensatory damages of $2 million, along with $3 million in punitive damages (see id., Wherefore). 
Defendant now moves for summary judgment dismissing the Complaint in its entirety, arguing that: (1) he did not breach the fiduciary duties owed to M & W or Plattsburgh Taco, and he did not owe fiduciary duties to any other plaintiff; (2) even if the disclosures to Santana were improper, plaintiffs suffered no damages; (3) the faithless servant doctrine is inapplicable and otherwise fails on the merits; and (4) the equitable accounting claim is insufficiently pleaded.
Plaintiffs partially oppose the motion, and cross-move for partial summary judgment in favor of M & W and Plattsburgh Taco on their claims for breach of fiduciary duty (first cause of action) and faithless servant (third cause of action). 
II. ANALYSIS
"To prevail on a motion for summary judgment, the moving party must establish prima facie entitlement to judgment as a matter of law by adducing sufficient competent evidence to show that there are no issues of material fact" (Staunton v Brooks, 129 AD3d 1371, 1372 [3d Dept 2015] [citations omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). 
If the movant fails to satisfy this initial burden, the motion must be denied, "regardless of the sufficiency of the opposing papers" (Alvarez, 68 NY2d at 324). But if the movant establishes a prima facie case, the burden shifts to the nonmoving party to demonstrate that material issues of fact or legal defenses to the claims exist (see id.; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). All evidence must be viewed in the light most favorable to the opponent of summary judgment (see Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012]). 
A. Discontinuance/Proper Plaintiffs
As a preliminary matter, plaintiffs seek to discontinue the following claims: 
First Cause of Action — we discontinue on behalf of all plaintiffs except M & W, Plattsburg Taco and White Management; Second Cause of Action — we discontinue on behalf of all plaintiffs except M & W, Plattsburg Taco and White Management; Third Cause of Action — we discontinue on behalf of only plaintiff David R. White . . . ; Fourth Cause of Action — we discontinue on behalf of only plaintiff David R. White . . . ; Fifth Cause of Action — we discontinue in its entirety; Sixth Cause of Action — we discontinue in its entirety (NYSCEF Doc No. 97 ["Centi Aff."], ¶ 1 [emphasis omitted]).
Thus, plaintiffs seek to withdraw their claims for promissory estoppel and breach of contract in their entirety, concede that White is not a proper party to this case, and further withdraw all [*5]claims asserted by plaintiffs other than M & W, Plattsburgh Taco and White Management (id.). In the absence of any opposition, the requested discontinuance is granted.
Plaintiffs have not consented to the dismissal of the claims brought by White Management. But the undisputed facts show that defendant was not an employee, officer, director, or owner of White Management (see D-RSOMF, ¶¶ 1-3, 10-12), and the company may not pursue claims based on its limited role in administering M & W and Plattsburgh Taco's payroll (see NYSCEF Doc No. 126 ["Opp Mem"], pp. 3-4; David White Aff., ¶¶ 3-4). Accordingly, White Management is not a proper plaintiff.
B. Breach of Fiduciary Duty
A claim for breach of fiduciary duty "requires the existence of a fiduciary relationship, misconduct by the defendant[] and damages directly caused by the misconduct" (Testani v Russell & Russell, LLC, 204 AD3d 1260, 1262 [3d Dept 2022]; see Loch Sheldrake Beach & Tennis Inc. v Akulich, 141 AD3d 809, 811 [3d Dept 2016], lv dismissed 28 NY3d 1104 [2016]). 
Defendant acknowledges that he owed fiduciary duties to M & W and Plattsburgh Taco (see R-DSOMF, ¶¶ 9-14; NYSCEF Doc No. 92 ["MOL"], p. 6), but contends that there is no evidence of fiduciary misconduct and, in any event, M & W and Plattsburgh Taco did not sustain any injury or suffer any loss from the alleged misconduct.
Defendant first argues that "M & W and Plattsburgh Taco cannot establish that [he] committed any acts of misconduct in breach of any duty he owed as a director of either corporation" (MOL, p. 7). According to defendant, "[t]he evidence shows that [he] transmitted ARM's financial information to Santana for the purpose of inquiring whether Santana had any interest in purchasing the seven Dunkin' restaurants wholly owned by ARM," a transaction that did not involve "any of the restaurants owned by Plattsburgh Taco or M & W" (id., pp. 7-8). 
Further, defendant asserts that "[t]here is no proof suggesting that [he] disclosed the information . . . to injure [plaintiffs] or to usurp a corporate opportunity" (id., p. 9). Rather, defendant claims to have "inadvertently transmitted M & W and Plattsburgh Taco's debt information to Santana when he aimed to share ARM's information" (id.).
The proof adduced by defendant shows, prima facie, that the challenged dissemination of financial information was made in connection with defendant's legitimate efforts to explore whether Santana was interested in purchasing the seven Dunkin' restaurants owned by ARM in the event that the transaction with White did not go forward, and the discussions between defendant and Santana did not pertain to the restaurants owned by M & W or Plattsburgh Taco (see Ray Aley Dep., pp. 101-107; Santana Dep., pp. 24-25, 83-85, 104; Ray Aley Aff., ¶¶ 28-51 & Ex. C).[FN2]
The sale of ARM's restaurants was not a corporate opportunity of plaintiffs, and defendant's activities on behalf of ARM were not in inherent conflict with the duties he owed to M & W and Plattsburgh Taco as a fiduciary (see e.g. Licensing Dev. Group v Freedman, 184 AD2d 682, 683 [2d Dept 1992]).[FN3]

Defendant's proof further shows that the dissemination of M & W and Plattsburgh Taco's financial information was inadvertent, a product of the fact that both ARM and White Companies maintained their financial information on the White Network, together with defendant's failure to redact the White Companies' financial information before sending the emails to Santana (see Ray Aley Dep., pp. 101-107; Ray Aley Aff., ¶¶ 36-41, 56).
Plaintiffs respond to this evidentiary showing with the following argument:
Defendant engaged in a course of misconduct. He betrayed a duty of trust, through a [*6]series of communications and improper disclosures to third parties. The disclosures included proprietary and confidential information of the plaintiffs M & W and Plattsburgh Taco. The conduct was willful. It was clandestine, though he was as a fiduciary strictly obligated to make full disclosure of all material facts at all times. He did so for his own personal interest, without any benefit whatsoever to these two plaintiffs (Opp Mem, p. 5).
But there is no evidence that defendant disclosed plaintiffs' information to advance any personal interest beyond his legitimate desire to ensure the sale of ARM's restaurants in the event the transaction with White did not close. Nor is there evidence that defendant or Santana derived any financial benefit from the inadvertent disclosure. White and his companies ultimately obtained full ownership of M & W and ARM's seven Dunkin' restaurants, and defendant and Santana did not enter into any agreement. 
Further, plaintiffs' assertion that defendant acted willfully in sending the emails to Santana lacks evidentiary support. Plaintiffs ask the Court to disbelieve defendant's sworn testimony on account of the considerable friction between White and the Aleys,[FN4]
as well as evidence that defendant had been more careful about redacting email attachments of combined White Companies/ARM financial data in the past (see Opp Mem, p. 5-8).
The Court recognizes that caution is warranted in granting summary judgment where state of mind is at issue. But plaintiffs have had years to discover the pertinent facts, and the proof offered in opposition to the motion amounts to nothing more than speculation. Further, plaintiffs offer no explanation as to how defendant could have expected to harm White or obtain an improper benefit by disclosing a small slice of plaintiffs' financial information to Santana, an individual who already had received a vast quantity of such information from the White Companies under a confidentiality and nondisclosure agreement. Plaintiffs' speculation regarding willfulness and malevolence therefore lacks plausibility in light of the surrounding circumstances.
And while plaintiffs complain about the "clandestine" nature of defendant's communications, they have not offered any basis for concluding that defendant was under a duty to keep plaintiffs apprised of efforts to arrange an alternative disposition of the seven Dunkin' restaurants owned by ARM in the event the transaction with White did not close.
The Court therefore concludes that plaintiffs' allegations of fiduciary misconduct lack evidentiary support and rest on speculation and surmise. "Mere speculation cannot support a cause of action for breach of fiduciary duty" (Matter of Kenneth Cole Prods., Inc. Shareholder Litig., 27 NY3d 268, 278 [2016]; see Silverstein v Westminster House Owners, Inc., 50 AD3d 257, 258 [1st Dept 2008]).
In any event, even if plaintiffs' disbelief of defendant's testimony or their unsupported speculation regarding his motives were sufficient to give rise to a triable issue of fact, the record conclusively demonstrates that plaintiffs have not sustained any loss from the disclosure to Santana. There simply is no evidence of any damages or injury to plaintiffs or any benefit to defendant.
First and foremost, the disclosure did not prevent the transaction contemplated in the June [*7]2019 and July 2019 letters of intent from being consummated. In September 2019, the Aleys and White entered into an agreement by which ARM's seven Dunkin' restaurants were transferred to M & W, and White acquired the Aleys' entire interest in M & W (see R-DSOMF, ¶¶ 138-139; SPA).
Further, Santana did not use or rely on the inadvertently disclosed information. Santana did not even recall receiving the information sent to him by defendant, and he considered any information concerning M & W and Plattsburgh Taco to be irrelevant at that point (see Santana Dep., pp. 44-48; R-DSOMF, ¶ 117). Santana further testified that he never used or disseminated any of the information provided by defendant (see Santana Dep., pp. 94-101; R-DSOMF, ¶ 123).
Additionally, much of the same financial information had been disclosed to Santana in connection with his negotiations to acquire the Dunkin' Network under a nondisclosure and confidentiality agreement (see Santana Dep., pp. 66-71, 94-99; Nolan Aff., Ex. O; cf. R-DSOMF, ¶¶ 120-121). And sales information for the White Companies had been disclosed to third parties, including competitors and landlords (see Ray Aley Aff., ¶¶ 42-50; R-DSOMF, ¶¶ 44-49), and information concerning plaintiffs' indebtedness is available through public filings (see R-DSOMF, ¶ 43; Nolan Aff., Ex. S; David White Dep., pp. 99-102).
When plaintiffs were asked during discovery to articulate the basis for their demand for $2 million in compensatory damages (see Complaint, ¶ 33), they were unable to do so. For his part, White acknowledged that the disclosure did not prevent the transaction contemplated in the letters of intent from going forward, and "there are no numbers" demonstrating a $2 million financial loss (David White Dep., pp. 118-121; R-DSOMF, ¶ 166). 
And Brian White, who is White's son and plays "a very active leadership role" in the White Companies (R-DSOMF, ¶ 167), testified that no damages had been suffered by plaintiffs to date, but claimed that "[i]t's a little unclear as to the extent of the damages at this point because we still don't know what exactly Aley was up to," it's "hard to say what the impact of that's going to be," and "it's premature even to kind of put a number on it" (Brian White Dep., pp. 36-44). 
Thus, after years of litigation and pretrial discovery, plaintiffs could not identify any damages caused by the challenged disclosure, and they continued to rely on the highly speculative and increasingly remote "possibility that the White Companies might one day suffer some future impact" (R-DSOMF, ¶ 169).
In opposing defendant's motion, plaintiffs also tender two new contentions regarding damages, despite discovery demands obliging plaintiffs to produce all evidence supporting their claimed damages (see NYSCEF Doc No. 131, p. 3 n 2). 
Plaintiffs first assert that they are entitled to recover the cost of creating the weekly sales reports and debt schedules disclosed to Santana (see Opp Mem, pp. 8-9; see also Peek Aff., ¶¶ 5-8). As observed by defendant, however, these reports were created in the regular course of plaintiffs' business and would have been created irrespective of their subsequent disclosure to Santana (see R-DSOMF, ¶¶ 36-40, 44-47). Thus, it cannot be said that defendant's disclosure caused plaintiffs to expend time and resources in creating the documents. Nor is there any basis to conclude that the reports and schedules lost their value to plaintiffs on account of the dissemination.
Plaintiffs further argue that defendant "caused injury to [them] while seeking personal opportunities with . . . Santana. The pecuniary injury included: his use of the time, equipment and resources of plaintiff M & W, such as the email system of White Management, a cost share of which was charged by White Management to M & W and Plattsburgh Taco; and his misuse of proprietary data of M & W and Plattsburgh Taco compiled and preserved by White Management for their benefit and at their cost," all of which "are recoverable as damages" (MOL, pp. 8-9, citing 30 FPS Prods., Inc. v Livolsi, 68 AD3d 1101 [2d Dept 2009]). 
The precedent cited by plaintiffs, however, concerned an employee's "improper use of the employer's time, facilities, or proprietary secrets" in "incorporat[ing] a business prior to leaving his employer" (30 FPS Prods., 68 AD3d at 1102 [internal quotation marks and citation omitted]). [*8]This plainly is not such a case. Plaintiffs gave defendant broad access to the "White Network," including the use of the computer system to store ARM's business data (see R-DSOMF, ¶ 33), and plaintiffs have failed to establish that defendant was not authorized to send some personal emails pertaining to ARM through the system.
Plaintiffs' reliance on Diamond v Oreamuno (24 NY2d 494 [1969]) similarly is misplaced, as there is no evidence that defendant profited "from the exploitation" of plaintiffs' information (id. at 497-498). Plaintiffs have not demonstrated the availability of a restitutionary measure of recovery.
Plaintiffs also argue that they are entitled to recover punitive damages (see Opp Mem, pp. 10-11), but "punitive damages may not be awarded absent sustainable compensatory damages" (Rivera v City of New York, 40 AD3d 334, 344 [1st Dept 2007], lv dismissed 16 NY3d 782 [2011]; see Hubbell v Trans World Life Ins. Co. of NY, 50 NY2d 899, 901 [1980]). In any event, the limited and speculative proof of misconduct adduced by plaintiffs does not "meet the 'very high threshold of moral culpability'" needed to sustain an award of punitive damages (Lex Tenants Corp. v Gramercy N. Assoc., 288 AD2d 48, 49 [1st Dept 2001], quoting Giblin v Murphy, 73 NY2d 769, 772 [1988]; see Schwartz v 170 W. End Owners Corp., 161 AD3d 693, 694 [1st Dept 2018]).
Cases involving breach of fiduciary duty "comprise a special breed of cases that often loosen normally stringent requirements of causation and damages," but the proponent of such a claim "must, at a minimum, establish that the offending [party's] actions were a substantial factor in causing an identifiable loss" (Gibbs v Breed, Abbott & Morgan, 271 AD2d 180, 189 [1st Dept 2000] [internal quotation marks and citations omitted]). Where, as here, such proof is absent, the claim must be dismissed (see Celauro v 4C Foods Corp., 187 AD3d 836, 838 [2d Dept 2020]; Country Club Partners, LLC v Goldman, 79 AD3d 1389, 1391-1392 [3d Dept 2010]; Gibbs, 271 AD2d at 189). 
Based on the foregoing, plaintiffs' claim for breach of fiduciary duty is dismissed.
C. Third Cause of Action (Faithless Servant Doctrine)
Plaintiffs seek to recover damages under the faithless servant doctrine, arguing that defendant "has acted in a manner not consistent with his trust, and not performed his duties with utmost good faith and loyalty" (Opp Mem, pp. 11-15). 
"The faithless servant doctrine holds that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally disentitled to recover his or her compensation, whether commissions or salary. It makes no difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent" (Matter of Panos v Mid Hudson Med. Group, P.C., 204 AD3d 1016, 1018 [2d Dept 2022] [internal quotation marks, citations and brackets omitted]; see City of Binghamton v Whalen, 141 AD3d 145, 147 [3d Dept 2016]). 
For the reasons stated in Part II (B), supra, the Court concludes that the record discloses "no grounds by which to conclude that [defendant] was dishonest or otherwise breached his fiduciary obligation to plaintiff[s]" so as to warrant the forfeiture of earned compensation (Matter of Gupta, 38 AD3d 445, 447 [1st Dept 2007]). As such, plaintiffs' reliance on the faithless servant doctrine "is equally unavailing" (id.; see Delville v Firmenich Inc., 920 F Supp 2d 446, 469-470 [SD NY 2013]).
D. Second and Fourth Causes of Action (Accounting)
The equitable remedy of an accounting "is designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds in his or her possession" (Roslyn Union Free School Dist. v Barkan, 16 NY3d 643, 653 [2011]). The elements of such a claim include "a fiduciary or confidential relationship" and "money entrusted to the defendant imposing the burden of an accounting" (Metropolitan Bank & Trust Co. v Lopez, 189 AD3d 443, 446 [1st Dept 2020]).
Plaintiffs have neither alleged nor proven that they entrusted money to defendant under [*9]circumstances giving rise to a duty to account. For this reason, their claim for an accounting must be dismissed. 
And insofar as plaintiffs complain that they have not had a chance to depose defendant regarding the "new allegations" of their second amended complaint (Opp Mem, pp. 17-18), their speculation or hope that further discovery would uncover new evidence of misconduct or redressable injury after years of litigation is insufficient to warrant denial of defendant's motion (see CPLR 3212 [f]; Stoian v Reed, 66 AD3d 1278, 1280-1281 [3d Dept 2009]).
CONCLUSION
Based on the foregoing,[FN5]
it is
ORDERED that defendant's motion for summary judgment is granted in all respects, and plaintiffs' cross motion is denied in all respects; and it is further
ORDERED that plaintiffs' second amended complaint is dismissed in all respects; and finally it is
ORDERED that the parties shall arrange for the retrieval of the confidential documents and exhibits submitted to the Court within twenty (20) days or the documents will be discarded. 
This constitutes the Decision & Order of the Court, the original of which is being uploaded to NYSCEF for entry by the Albany County Clerk. Upon such entry, counsel for defendant shall promptly serve notice of entry on all parties entitled to such notice.
Dated: Albany, New York
February 9, 2023
___________________________
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 43-92, 94-126, 131-147 (and corresponding confidential papers).

Footnotes

Footnote 1: Specifically, the Complaint recites that the disclosures were made in the following documents: "on June 18, 2019 to Ever Santana entitled 'Debt Schedules' relating to years 2011 to 2018; on June 18, 2019 to Ever Santana entitled 'M & W Budgeted Management Expenses 2019'; on June 16, 2019 to Ever Santana of 'Weekly Results Dunkin Donuts for the Week Ending June 15, 2019'; on June 24, 2019 to Ever Santana and Andrew Hirshon of 'Weekly Sales Report' for Dunkin Donuts, Taco Bell and KFC; and on July 1, 2019 to Ever Santana and Andrew Hirshon of 'ARM/M & W Foods Weekly Sales and Labor Report' for Dunkin Donuts, Taco Bell and KFC; and on July 22, 2019 to Ever Santana of 'Weekly Results Dunkin Donuts for the Week Ending July 20, 2019' for Dunkin Donuts, KFC and Taco Bell" (id., ¶ 26).

Footnote 2: Numerous documents have been redacted on NYSCEF pursuant to the confidentiality stipulation. Thus, where applicable, the Court will refer to the original, unredacted documents provided to it in camera, as opposed to referencing the NYSCEF docket.

Footnote 3: To the extent that plaintiffs formerly alleged a contractual claim predicated upon the "no-shop" provision of the letters of intent, the claim effectively has been withdrawn (see Part I [A], supra).

Footnote 4: Plaintiffs emphasize a disparaging email send by defendant to Santana and Hirshon in June 2019, complaining that White was "stealing" M & W and Plattsburgh Taco from his own daughter and son-in-law (White Aff., ¶ 29; Centi Aff., Ex. V). However, this email merely demonstrates the severely deteriorated family relationships that precipitated and animated this lawsuit (see e.g. R-DSOMF, ¶¶ 148-151). Indeed, even after learning of at least one improper disclosure from defendant to Santana, White told his daughter that he considered the matter to be "water above the dam" and continued to work towards consummating the transaction with defendant (id., ¶¶ 134, 138).

Footnote 5: The Court has considered plaintiffs' remaining arguments and contentions but finds them unavailing.